382 P.2d 560

**Mrs. Marie D. THROOP, a widow, for the benefit of herself and her minor children, Appellant,**

**v.**

**F. E. YOUNG AND COMPANY, a corporation, Appellee.**

**Robert D. STAUFFER, as administrator of the Estate of Peter J. Hennen, deceased, Appellant,**

**v.**

**Mrs. Marie D. THROOP, a widow, for the benefit of herself and her minor children, Appellee.**

No. 6852.

Supreme Court of Arizona.

En Banc.

June 5, 1963.

Udall & Udall, Tucson, for appellant, Mrs. Marie D. Throop.

Cavanagh & O'Connor, Phoenix, for appellee, F. E. Young & Co.

Moore & Romley, Phoenix, for appellant, Robert D. Stauffer.

WARREN L. McCARTHY, Superior Court Judge.

The plaintiff, Mrs. Marie D. Throop, a widow, brought a wrongful death action for the benefit of herself and her minor children, against defendants Robert D. Stauffer, as administrator of the estate of Peter J. Hennen, deceased, and the F. E. Young and Company.

Vernon Throop, husband of the plaintiff, Marie Throop, was a counter-intelligence officer of the United States Army working out of Tucson, Arizona. On October 10, 1957, Throop, with a passenger, was driving west towards Tucson on U. S Highway 80 near Benson. On a level and straight highway in broad daylight the vehicle occupied by Peter Hennen, proceeding in an easterly direction, suddenly swerved into Throop's lane of traffic causing a violent head-on collision. Both Throop and Hennen were found dead in their cars by witnesses to the accident.

At the conclusion of the evidence, both defendants moved for a directed verdict. The court directed a verdict for the defendant F. E. Young and Company and denied the motion of Robert D. Stauffer, as administrator. The jury returned a verdict for plaintiff in the sum of $50,400.00 against the administrator.

Plaintiff has appealed from the directed verdict in favor of the F. E. Young and Company, and the defendant Stauffer, as administrator of the estate of Hennen, has appealed from the verdict in favor of plaintiff.

We will first consider the appeal of the plaintiff which is set forth in three assignments of error. The first two complain that the trial court erred in directing a verdict in favor of the defendant F. E. Young and Company. Consequently we must view the evidence in the light most favorable to the plaintiff, against whom judgment was rendered, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether, under the law, the verdict for defendant can be sustained. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601.

Plaintiff's first assignment of error is that there was sufficient evidence from which the jury could have found that the defendant controlled or had the right to control the actions of its deceased salesman.

The uncontradicted evidence of Hennen's employment by F. E. Young and Company showed that Violet Jennings, 48, a widow, was president of the Company which caused to be manufactured various medical testing kits and sold them to wholesalers throughout the country. The company employed the services of only two office employees other than the services of Peter J. Hennen. Hennen had been with the company 15 years and during the lifetime of William Jennings (deceased husband of Violet Jennings), a letter was drawn up by Mr. Jennings outlining the terms of the contract between the company and Hennen. Mrs. Jennings testified that the manner in which Mr. Hennen performed the services for the company was that he would come to the company office from time to time, pull cards on wholesale houses, and pick out the ones he desired to visit; or, if one of

the two office employees would make a list of wholesalers for Hennen to visit, he would modify the list as he saw fit. He took care of his own hotel and traveling expenses out of his commissions; 1¼ cents per mile was paid on his automobile which he owned. He had no power to fix prices but he often gave more discounts than were on the discount cards furnished wholesalers and the company accepted these. At times he wrote the company, so that he could get his mileage checks sent to him and also to let his family know where he was. He arranged his selling visits in accordance with the times he wished to visit relatives in various parts of the country and stayed with his relatives for varying periods of time as he desired. Hennen sold the goods of at least one other company while on his trips, in particular, novelty glass vases and paper weights for the St. Clair Glass Works. The amount of his commissions with the defendant company never exceeded $1,200 in any one year as Hennen was receiving social security and did not wish to jeopardize this status. The company made deductions from payments to Hennen for federal withholding tax and paid federal employment compensation. He was carried the same way on personnel records as the two office employees. Hennen visited the office an average of only four or five times a year.

The company had no program of physical examinations for its employees. Just prior to the trip during which this accident occurred, Hennen told Mrs. Jennings that he had had a physical examination and that his doctor had given him a clean bill of health. To Mrs. Jennings he appeared to be a robust man, gave the impression of having the best of health and never complained at any time of being ill. The fact that Hennen suffered from a heart condition was unknown to Mrs. Jennings. The matter of the heart condition will be referred to later in more detail.

█ The test to determine if the doctrine of "respondeat superior" applies to charge an employer with liability for negligence of his employee is whether, with respect to the physical conduct of the employee and the performance of his service, he is subject to the employer's control or right of control. This principle is stated in Restatement of the Law, Agency 2d, § 220 in part as follows:

"§ 220.  Definition of Servant

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

\* \* \* \* \* \*

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

\* \* \* \* \* \*

"(g) the method of payment, whether by the time or by the job; \* \* \*."

The foregoing test has been approved and followed in Arizona in the cases of Consolidated Motors, Inc. v. Ketcham, 49 Ariz. 295, 66 P.2d 246, and Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35.

The following discussion from the Consolidated Motors case is controlling in the instant case:

"But the ultimate fact, which these evidentiary facts are merely intended to assist the jury or court in determining, is whether the alleged servant is subject to the other's control or right to control in the manner in which he reaches the desired result. The distinction is well set forth as follows:

" 'It is important to distinguish between a servant and an agent who is not a servant, since ordinarily a principal is not liable for the incidental acts of negligence in the performance of duties committed by an agent who is not a servant (see § 250). One who is employed to make contracts may, however, be a servant. Thus, a shop girl or a traveling salesman may be a servant and cause the employer to be liable for negligent injuries to a customer or for negligent driving while traveling to visit prospective customers. The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees

only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors' and do not cause the person for whom the enterprise is undertaken to be responsible, under the rule stated in § 219.' "

It is plaintiff's position that under Restatement of the Law, Agency 2d, § 220(2), there was sufficient evidence to raise an inference of a master-servant relationship that should have been submitted to the jury.

Plaintiff contends that by virtue of the contract signed by Hennen and Mr. Jennings prior to his death, at least seven years before the accident, Mr. Hennen was clearly a servant and not an independent contractor by reason of the mandatory provisions of the contract. This contract provided that Hennen was to do the following: "You are to call on accounts or prospects in person and not by telephone. You are to present all items that we sell to each dealer. You are to submit a written report on each prospect called on, giving reasons where an order is not obtained for each item." The letter further provided that Hennen would make collections, pick up stock from customers, put out display cards to dealers and perform other duties. This letter was later copied by Mrs. Jennings but was never signed and was apparently used as a memorandum of the method of computing commissions due Hennen.

The uncontradicted testimony is that Hennen never made any written reports or put out display cards. There is no testimony as to the manner he called on customers. Hennen did pick up and return some unsalable items. Mrs. Jennings testified that when she took over the business on her husband's death she just continued things as they were and never discussed any changes in procedure with Mr. Hennen. Hennen had no office duties and when he would return from his trips he would report to Mrs. Jennings, his "superior" but not his "supervisor."

Of significance to the control or right to control issue is the testimony that Hennen represented other companies, such as the St. Clair Glass Works, but the extent of this representation was unknown. Some of the samples of the St. Clair Glass Works were found in Hennen's car after his death.

There is no evidence of actual control over Hennen's use of his car or methods of selling. Any right to control selling procedures, if such still existed by virtue of the original letter-contract, would not justify an inference of any right to control the time, method or manner of the operation of Hennen's automobile. This was a matter of Hennen's uncontrolled discretion within the United States at large, for business, for pleasure, representing defendant's company or other companies as he chose.

Plaintiff next states as a "signpost" that the fact either party may terminate the employment at any time without liability, raises a strong inference that the workman is a servant. Plaintiff states this to be the most important of all criteria, and, cites several industrial commission cases in support thereof. These cases relate the proposition that "[b]y virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact, if a fact, that it did not do so is immaterial." Industrial Commission v. Bonfils, 78 Colo. 306, 241 P. 735; L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz. 257, 30 P.2d 491.

■ Workmen's Compensation cases and cases arising under similar social legislation are not necessarily authority for principles giving rise to common-law liability under the doctrine of respondeat superior. 1 Larson, Workmen's Compensation Law 628, § 43.40 et seq.

Arizona is in accord with this proposition. In the case of Beaman v. Superior Products, Inc., 89 Ariz. 119, 358 P.2d 997, a case involving the Employment Security Act, the Court stated:

"In relation to the particular point here in issue (who is covered by the act?) we have made it clear that the common law definition of the terms 'employer', 'employee' and 'independent contractor' has been abrogated *for the purposes*

*of the act* in favor of a more liberal interpretation consistent with the purpose of the act. We went to great pains to make this clear in McClain v. Church, 72 Ariz. 354, 357–358, 236 P.2d 44, 46–47, 29 A.L.R.2d 746: * * *." (Emphasis added)

Rather than unnecessarily extend this opinion by a discussion of all the "signposts" set forth in plaintiff's assignments of error it suffices to state that the ultimate issue in the servant-independent contractor disputes is "control or right to control". The "matters of fact" or "signposts" listed in the Restatement are but matters to be considered.

■ An examination of the facts in the instant case makes readily apparent the correctness of the trial court's ruling in directing a verdict in favor of defendant F. E. Young and Company for there is no evidence from which to reasonably infer that the defendant had a right to control Hennen in the operation of his automobile. The whole of the United States and anywhere he chose to go in it was Hennen's territory. He visited prospects at whatever time he chose and he selected the prospects, visiting the office only four or five times a year. Clearly, no inference of control could stand the scrutiny of a motion for judgment notwithstanding the verdict had the case been submitted to the jury. There being no control or right of control,

the reason for imposing vicarious liability upon this employer is wanting. Shedd Brown Mfg. Co. v. Tichenor, (Ky.) 257 S.W.2d 894; McCarthy v. Souther, 83 N.H. 29, 137 A. 445.

■ Plaintiff's second assignment of error states that defendant was negligent in allowing Hennen to drive for it when it knew or should have known that Hennen suffered from a heart condition which was likely to cause his sudden death or unconsciousness while on the highway.

Plaintiff cites the Restatement of the Law, Torts, § 307:

"It is negligence to use an instrumentality, whether a human being or thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others."

From the proposition "it is well settled that a party is charged with knowledge of those things which he could have found and should have found upon a reasonable inspection" (City of Phoenix v. Weedon, 71 Ariz. 259, 226 P.2d 157), plaintiff contends that reasonable men might conclude that the F. E. Young and Company should have required a physical examination of Mr. Hennen or at least inquired of him as to his physical condition.

As set forth in the statement of facts, Mr. Hennen's physical condition was inquired into just prior to his last trip and thus there is no justiciable issue on this question.

As to whether the F. E. Young and Company should have required a physical examination of Mr. Hennen, the first inquiry should be, is there such a duty. As stated in Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352:

"Where negligence is charged to another's conduct, it is often helpful to break the problem down into its component parts of duty, violation thereof, and resulting injury, or, as we recently declared in City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323, 325: 'It is basic under our law that to constitute actionable negligence the defendant must owe a duty to the plaintiff, * *.' "

Plaintiff argues by analogy that it is just as reasonable to say that the F. E. Young and Company should have foreseen the possibility of exposing others lawfully using the highways to an unreasonable risk of harm by the employment of an incompetent driver, as it is for an owner to entrust or bail his vehicle to an incompetent driver. In both cases plaintiff states liability should be imposed because the harm is foreseeable.

We know of no duty, where, as here, an employer should require a physical examination prior to permitting a part-time salesman to use his own car in selling goods of the employer where there is no known evidence of the salesman's incompetence.

Plaintiff's third assignment of error states as follows:

"The trial court erred in permitting the witness Stauffer to testify over plaintiff's objection that four days after the accident he found in Hennen's car certain objects which Hennen was allegedly selling for other manufacturers —when the uncontradicted evidence showed that the car had been involved in a serious accident on a public highway, had been towed to a garage which was open to the public and had been left in a condition where numerous persons had access to it for a period of at least 4 days prior to the inspection of the witnesses—on the grounds and for the reason that such testimony was incompetent and irrelevant in the absence of a proper foundation from which reasonable men could conclude that these objects were in the automobile at the time of the collision."

Montgomery Ward & Co. v. Wright, 70 Ariz. 319, 220 P.2d 225, states the general rule that the existence of a particular condition or fact before and after an act in question may be shown to indicate the existence of the same condition or fact at the time of the act, but,

"Where the fact situation has inherent in it the likelihood of a change * * * the testimony concerning the situation which is presumed to continue must be fairly close to the event to which it is presumed to continue. The more volatile the situation the nearer to the event must the observation be in order to have probative value. * *"

The Court further stated:

"There is nothing of a continuous nature in the fact that on January 27th the floor of defendant was slippery as a result of the application of a floor dressing on it that would warrant a presumption it was slippery on the following March the 10th. Its very intrinsic impermanency unequivocally denies the existence of such a presumption."

The testimony of Mrs. Jennings that Hennen did sell glass articles of the nature found in the car for the St. Clair Glass Works laid a sufficient foundation for the admission of this evidence. This fact situation does not have inherent in it the likelihood of change. The admission of evidence is a matter largely within the discretion of the trial court and its ruling will not be disturbed except where there is shown abuse of discretion. Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059.

The order of the court in directing a verdict for the defendant F. E. Young and Company is affirmed.

Defendant Robert D. Stauffer, as administrator of the estate of Peter J. Hennen, deceased, appealed from the jury ver-

dict and sets forth three assignments of error. The first assignment concerns a claim of privileged communication arising from a physician-patient relationship. In his opening statement to the jury, defendant stated the evidence would show that Mr. Hennen "had a *sudden* heart attack, the heart attack proved fatal and killed him". On cross-examination of plaintiff's first witness, defendant introduced Hennen's death certificate which stated "Heart failure. Interval between onset and death *sudden.*" Apparently, there was no autopsy performed on Mr. Hennen.

Plaintiff offered the deposition of Dr. Jack Fischer, of Chicago, Illinois, who had treated Peter Hennen for a heart condition. In the deposition, Dr. Fischer testified he had examined and prescribed medication for Hennen for angina pectoris, and that Hennen had been examined by him several times during the period from 1947 to 1956. During the 1947 visit the doctor advised Hennen not to drive a car due to his heart condition. This heart condition was still present at the time of Hennen's last visit. After lengthy arguments in chambers, the court ruled it would not honor a claim of privilege made in chambers, but would require defendant to assert its claim of privilege in the presence of the jury as to each question it felt was within the privilege.

When the trial resumed in the presence of the jury, and after the preliminary questions touching the doctor's qualifications were read from the deposition, the defendant objected "to the testimony of Dr. Fischer with reference to any care or treatment he may have rendered the late Peter J. Hennen in his lifetime on the grounds of privilege." This objection was later enlarged to "all questions and answers contained in this deposition so that I won't interrupt counsel and he can proceed with a reading of the matter in its entirety." Previously, by informal proceedings in chambers, plaintiff had planned on not reading every question and answer so as to avoid repetition and for other reasons. These omitted questions and answers were so noted by the court reporter although no stipulation was entered into concerning them. The following proceedings then took place before the court and jury:

"Q [Reading from deposition] When was the first time you treated Mr. Hennen professionally?

\*    \*    \*    \*    \*    \*

"A I first saw Mr. Hennen on December 4, 1947.

"Q And where did you see him?

"A He came to my office.

"Q And what, if anything, did you do on that occasion?

"BY THE COURT: Now the rest of that will not be read.

"BY MR. ROMLEY: May I be heard on that, your Honor?

"BY THE COURT: Yes.

"BY MR. ROMLEY: If the Court please, if the deposition is to be read, as I understand the rule here, Rule 26 of the Rules of Civil Procedure [16 A.R.S.] provide that where a deposition is offered in evidence by a party, all which is relevant to the part introduced shall be read. Now counsel, as I understand it, should be required to read everything here or none at all. I mean, we should have the whole picture and not just parts of it, so I don't —I object to his skipping around through the deposition and taking what he considers favorable and leaving the rest out.

"BY THE COURT: Well, so I may understand you, you still adhere to your claim of privilege, is that right? "BY MR. ROMLEY: That's correct, your honor, yes.

"BY THE COURT: Yet you want him to read each individual question and claim your privilege as to each question?

"BY MR. ROMLEY: And then let him read each answer, too, because otherwise the privilege is destroyed. I think that if we are going to present the matter to the jury they are entitled to have it all.

"BY THE COURT: Well, as you wish. Go ahead.

"BY MR. UDALL: The question was:

" 'Q And what, if anything, did you do on that occasion?

"A I took a history, did a physical examination and I did some laboratory data such as urine, blood test and so forth, and prescribed medication for him.' "

There was no further claim of privilege during the remainder of the deposition wherein the care and treatment of Mr. Hennen was discussed, and the deposition was read in its entirety.

■ Counsel thus declined to claim privilege as to any individual question or make a record thereon and further insisted that all questions and answers in the deposition be read. The remaining questions asked of Dr. Fischer were not all within the privilege, such as the fact and the several dates of the professional visits. Such being the case, the general objection that the testimony was privileged would not suffice. Defendant, in effect, abandoned and waived the privilege. Having done so there is presently no justifiable issue remaining thereon. Further, it is readily apparent that defendant's claim of "sudden heart attack" on the issue of negligence was highly material and not in accord with the actual facts. The claim of privilege to buttress such a position is contrary to the spirit of the privilege and the purpose of trials to

ascertain the truth. As stated in 8 Wigmore on Evidence (McNaughton Rev.1961) 855, § 2388:

> "A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield * *."

■ Defendant Robert D. Stauffer, as administrator of the estate of Peter J. Hennen, deceased, as his second assignment of error contends the court committed reversible error by instructing the jury on res ipsa loquitur under the facts of this particular case. Both parties agree that where, in a proper case, the evidence does not purport to furnish a complete explanation of the specific cause of the injury, the plaintiff is not deprived of the benefit of res ipsa loquitur. 33 A.L.R.2d 791, Prosser on Torts (2d Ed.) 214, § 43; 2 Harper & James, The Law of Torts, 1096, § 19.10.

Defendant here contends that the plaintiff proved the specific cause of the injury and the specific conduct on the part of the defendant claimed to have been negligent and hence, there was nothing left to inference and the instruction on res ipsa loquitur was erroneous.

Plaintiff's complaint alleged general negligence. At the trial, plaintiff first showed the bare circumstances causing the death of Throop by showing that a car driven by Hennen suddenly crossed the center line of the highway and struck the Throop car head-on. At this point, since contributory negligence was not an issue, defendant contends plaintiff could have stopped and relied on res ipsa loquitur. Instead, plaintiff went further. He offered evidence that ten years prior to the date of the collision Hennen was told by Dr. Fischer that because of his heart condition he should not drive an automobile, and, only a few months prior to October 10th, the doctor again told Hennen to restrict his physical and mental activities. Plaintiff also showed, by the testimony of Aurelio Zamarripa, a passenger, that immediately preceding the collision the Hennen automobile was in effect "driverless" i. e., Zamarripa saw a hand on the wheel but no one behind it in a position to drive. He further showed that Dr. Fischer had prescribed for Hennen both Nitroglycerin and Peritrate. The Nitroglycerin was to be taken in the event of a sudden heart attack, and the Peritrate was heart medicine to be taken regularly. A half-filled bottle of Nitroglycerin and a bottle three-fourths full of Peritrate were found in Hennen's pockets at the time of the collision.

This Court on many occasions has discussed the doctrine of res ipsa loquitur.

In Capps v. American Airlines, Inc., 81 Ariz. 232, 234, 303 P.2d 717, 718, this Court said:

"The doctrine of res ipsa loquitur has been clearly defined by this court in many prior cases. We have said that the conditions necessary for the application of the doctrine are:

"(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence;

"(2) it must be caused by an agency or instrumentality within the exclusive control of defendant;

"(3) it must not have been due to any voluntary action on the part of the plaintiff;

"(4) *plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury.*" (Emphasis added)

This fourth requirement was imposed in Drumm v. Simer, 68 Ariz. 319, 205 P.2d 592, and is found in the dissenting opinion of Tenney v. Enkeball, 62 Ariz. 416, 158 P.2d 519 (majority opinion overruled in the Capps case.) See also 38 Am.Jur. 995, Negligence, § 299; 65 C.J.S. Negligence, § 220(6), page 1002; Prosser, Res Ipsa Loquitur in California, 37 Cal.Law Review 183, Section 8; cf. Udall, Arizona Law of Evidence, § 195.

Defendant Stauffer cites the cases of Creamer v. Cerrato, 1 Cal.App.2d 441, 36 P. 2d 1094, and McAnany v. Shipley, 189 Mo. App. 396, 176 S.W. 1079, in support of his views. In the Creamer case plaintiff showed that defendant's truck abruptly crossed to plaintiff's side of the road and struck her parked car. She then went further and showed that because of excessive speed the driver of the truck could not control it. In holding that res ipsa loquitur was inapplicable, the Court said:

"The doctrine would have been applicable if the evidence had merely shown that the truck, traveling on its wrong side, had struck the automobile, parked on its right side, and such facts would have raised an inference that the truck driver was negligent. [Citing cases] Under such circumstances, it would have been error to have given the instruction. [Citing cases] * * * But, since the testimony of appellant and of her witnesses explained the reason for the accident by showing that the truck's speed caused its driver to lose control in attempting to avoid the child, the doctrine is not applicable and the inference of negligence, raised by an unexplained collision, disappeared." 36 P.2d at 1095.

Arizona is not at variance with the doctrine set forth in the Creamer case, supra, cited by defendant. As stated in Drumm v. Simer, supra:

"* * * the doctrine (res ipsa loquitur) is predicated upon plaintiff's inability to specify the act of negligence which caused his injury, and therefore permits him to rely on the doctrine as a substitute for specific proof, * *." 68 Ariz. at 322, 205 P.2d at 594.

Under the facts of this case where defendant's car suddenly veered across the center line of the highway into the path of plaintiff's car resulting in the sole occupant of defendant's car being killed, the above evidence relating to an old existing heart condition by no means dispelled a possible and reasonable inference that defendant's car crossed the center line because he fell asleep or became inattentive or that the heart attack resulted from the shock of the impact. See Freitas v. Peerless Stages, 108 Cal.App.2d 749, 239 P.2d 671, 33 A.L.R.2d 778. At 33 A.L.R.2d 805 the rule we believe to be sound is stated as follows:

"Most of the cases stating and applying the rule that an unsuccessful attempt by the plaintiff to prove specific negligence, or his introduction of evidence of specific negligence which does not clearly establish the precise cause of the injury, will not preclude reliance on the otherwise applicable res ipsa doctrine, have apparently taken the view that, except in the clearest cases, both the specific evidence and the appropriate inferences from the happening of the accident should be permitted to go to the jury, which, if it rejects the specific proof, may still find against the defendant on the basis of the inference."

The plaintiff thus was unable to specify or prove the particular act of negligence causing the injury and the other conditions, supra, having been met, the doctrine of res ipsa loquitur was properly applied.

What has been said concerning the issue of res ipsa loquitur disposes of appellant's third assignment that it was error to instruct on the law applicable to one who falls asleep while driving. The facts of the case permitted the jury to find that Hennen became inattentive, fell asleep, or suffered a heart attack. He was alone in the car and no circumstantial evidence could conclusively negative any one of these inferences. Thus, the instruction was proper. cf. Pacific Employers Insurance Company v. Morris, 78 Ariz. 24, 275 P.2d 389.

The judgment is affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.

NOTE: The Honorable JESSE A. UDALL being disqualified, the Honorable WARREN L. McCARTHY, Judge of the Superior Court of Maricopa County, was called to sit in his stead.