746 P.2d 491

STATE of Arizona, Respondent,

v.

Joseph Felix TALLABAS, Petitioner.

No. 1 CA–CR 10506–PR.

Court of Appeals of Arizona,
Division 1, Department A.

July 7, 1987.

Review Denied Jan. 5, 1988.

Thomas E. Collins, Maricopa Co. Atty. by H. Allen Gerhardt, Deputy Co. Atty., Phoenix, for respondent.

J. Douglas McVay, Phoenix, for petitioner.

## OPINION

FIDEL, Judge.

The defendant asserted the insanity defense; to support it he offered testimony by a psychiatrist to whose examination the trial court had ordered that he submit for determination of his competence to stand trial and investigation of his mental condition at the time of the offense. The defendant had made certain damaging statements to the psychiatrist, which, had he not called the psychiatrist as a witness, the state could not have placed in evidence. The question on appeal is whether, by calling the psychiatrist as his witness on the issue of insanity, the defendant enabled the state to properly elicit those damaging statements on cross-examination.

Joseph Felix Tallabas (defendant) was tried before a jury and convicted of one

count of second degree murder, one count of second degree burglary, and two counts of aggravated assault. The charges stemmed from an incident on February 15, 1980, when Tallabas broke into a home, attacked its occupants, grabbed a two month old child from the arms of her mother, smashed the child against a cement carport, and struck the child with his fist several times. The child died of these injuries. Tallabas was sentenced by the Honorable Ed W. Hughes to consecutive terms of imprisonment totalling 27.75 years. The convictions and sentences were affirmed by this court by memorandum decision.[1]

Defendant filed a petition for post-conviction relief claiming ineffective assistance of counsel. Judge Hughes summarily dismissed the petition. The Honorable Francis P. Koopman denied defendant's motion for rehearing. Defendant filed a timely petition for review.

At trial defendant did not deny the acts alleged. He contended instead that he was rendered legally insane at the time of the offense by the involuntary consumption of LSD, a hallucinogenic drug. The jury was correctly instructed that "[t]he defense of insanity is not available to a defendant when the insanity is caused by the voluntary ingestion of intoxicants, whether they be alcohol or drugs." *See* A.R.S. §§ 13-502, -503; *e.g., State v. Cooper,* 111 Ariz. 332, 334, 529 P.2d 231, 233 (1974). The central issue at trial was whether the defendant's LSD ingestion was voluntary or involuntary.

Defendant called Thomas O'Brien, M.D., as a psychiatric expert to establish his insanity defense. Upon pretrial motion by the state pursuant to Rule 11, Arizona Rules of Criminal Procedure, the court had appointed Dr. O'Brien to evaluate defendant's competence to stand trial and his mental condition at the time of the offense. Dr. O'Brien testified on direct examination that Tallabas did not know the nature or wrongful quality of his acts. He based that opinion in part on defendant's ingestion of alcohol before the offense and his consumption of two microtabs of LSD. Asked on cross-examination the source of his knowledge that the defendant had taken two microtabs of LSD on the day of the crime, Dr. O'Brien disclosed that the defendant had told him so. The witness added upon further cross-examination that Tallabas stated that he had previously taken LSD, though never so much as two microtabs at once.

Defendant's knowledge of the quantity of LSD he had taken was inferentially harmful to his position that he had taken it involuntarily. Likewise harmful to that position was his disclosure that he had voluntarily taken the drug in the past. Defendant argues that he received ineffective assistance of counsel at trial because his lawyer, Robert L. Schwartz, failed to prevent the state from eliciting these statements from Dr. O'Brien. Although Dr. O'Brien had divulged the statements in his pre-trial report, defendant takes no exception to the decision to call him as a witness. Rather he argues that the statements were privileged under Rule 11.7(b)(1), and that his lawyer should have blocked their admission by motion in limine or timely objection. He adds that his trial counsel acknowledged his mistake in moving unsuccessfully for a mistrial the day after the harmful evidence came in.

The state responds that defendant has failed to raise a colorable issue for post-conviction relief. It reads our prior decision in this case as a determination that the testimony in question was admissible; from this it argues that the absence of objection by counsel is insignificant and cannot support a claim of ineffective assistance of counsel.

The state misinterprets our past decision. Tallabas indeed argued in his prior appeal that the trial court erred by allowing the jury to consider the statements of Dr. O'Brien. In our memorandum decision,

---

**1.** *State v. Tallabas,* 1 CA–CR 7792 (Ariz.App. mem. decision Apr. 25, 1985). This appeal followed a second trial on remand from our memorandum decision in *State v. Tallabas,* 1 CA–CR 5212 (Ariz.App. mem. decision July 28, 1983).

In CR–5212 we reversed a judgment of conviction and remanded the case for a new trial, holding that the question whether or not the defendant's intoxication was voluntary was for the jury.

however, we stated, "We need not reach the defendant's contention on the merits, because we find that defense counsel opened the door to the limited cross-examination." *State v. Tallabas*, 1 CA–CR 7792 (Ariz.App. mem. decision at 9, Apr. 25, 1985). We did not then decide whether, had there been a timely objection, it should have been sustained. We did not decide, that is, whether the defendant's statements to Dr. O'Brien were privileged beyond the reach of cross-examination. That issue is before us now.

### The Rule 11.7(b)(1) Privilege

We note initially that defendant claims that his statements to Dr. O'Brien were privileged under Rule 11.7(b)(1), and not under the general physician-patient privilege. A.R.S. § 13–4062(4). The general physician-patient privilege does not exist "where a doctor has been ordered to examine the defendant in order to testify in court about the defendant's condition." *State v. Ortiz*, 144 Ariz. 582, 584, 698 P.2d 1301, 1303 (App.1985). Thus we concentrate our inquiry on Rule 11.7(b)(1) and its constitutional underpinnings.

Rule 11.2, Arizona Rules of Criminal Procedure, provides:

At any time after an information is filed or indictment returned, any party may move for an examination to determine whether a defendant is competent to stand trial, or to investigate his mental condition at the time of the offense. The motion shall state the facts upon which the mental examination is sought.

Rule 11.7(b)(1) provides:

No statement of the defendant obtained under these provisions, or evidence resulting therefrom, concerning the events which form the basis of the charges against him shall be admissible at the trial of guilt or innocence, or at any subsequent proceeding to determine guilt or innocence, without his consent.

■ Rule 11.7(b)(1) codifies the holding that it is fundamentally unfair for a court-appointed psychiatrist after compulsory examination to transmit a defendant's incriminating statements to the jury. *See State*

*v. Evans*, 104 Ariz. 434, 436, 454 P.2d 976, 978 (1969). The rule is grounded in the fifth amendment to the United States Constitution; fifth amendment rights are violated where such statements are introduced at trial to prove the guilt or enhance the sentence of a criminal defendant who neither initiated psychiatric evaluation nor attempted to introduce psychiatric evidence of his own. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

The Arizona Supreme Court has recently stated that

the use of any statements made by a defendant during ... [Rule 11] examination should be strictly avoided. If the exact statement is so important that the prosecution would like to use it during trial, then it is apparently incriminating. Since this rule is to overcome the problem of forced self-incrimination, no statements made during the evaluation should be admitted.

*State v. Mauro*, 149 Ariz. 24. 34, 716 P.2d 393, 403 (1986). Rev'd on other grounds, —— U.S. ——, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987).

■ Rule 11.7(b)(1) makes it clear, as do *Evans*, *Estelle*, and *Mauro*, that, in the absence of defendant's consent, the state could not have called Dr. O'Brien as a witness to place defendant's statements before the jury without violating the defendant's fundamental rights. Here, however, the state did not call the doctor as a witness. The defendant chose to do so to prove insanity. And in so choosing, we hold, he consented to a thorough cross-examination of the doctor by the state, a cross-examination that probed and tested the bases of the doctor's opinion of insanity and exposed any statements by defendant to the doctor insofar as they underlay or related to that opinion.

To explain our holding we examine the rationale in several lines of related cases.

### Implied Waiver of the Physician-Patient Privilege

We first consider the doctrine of implied waiver of the physician-patient privilege as

applied to a party who places a particular medical condition in issue in civil negligence litigation. In *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 382 P.2d 560 (1963), the Supreme Court of Arizona held that a person who defended against claims of negligence by asserting that he had suffered a sudden heart attack thereby waived the physician-patient privilege as to previous heart-related treatment. Waiver was implied, the court explained, despite the absence of intentional abandonment of the privilege:

> A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield....

94 Ariz. at 158, 382 P.2d at 568, quoting 8 J. Wigmore, *Evidence in Trials at Common Law* § 2388 at 855 (McNaughton 1961). *See also Bain v. Superior Ct.*, 148 Ariz. 331, 714 P.2d 824 (1986), where, as it extended *Throop's* holding to the psychologist-patient privilege, the supreme court explained that waiver is implied only as to records and treatment concerning the specific medical or emotional condition placed in issue. 148 Ariz. at 335, 714 P.2d at 828.

*Throop* and *Bain* were civil cases. However, Division Two of this court employed their rationale to imply waiver of the doctor-patient privilege when a criminal defendant calls his treating psychologist or physician to advance his insanity defense. The court stated:

> Physician-patient privilege ... cannot be used both as a sword and a shield at the same time. The defendant cannot cast aside the protection of the privilege for matters that benefit him and then invoke the privilege to prevent the prosecution from inquiring into matters that may be harmful to him.
> When appellant opened the door to the issue of his sanity, he necessarily opened the door to statements he had made to the physicians.

*State v. Turrentine,* 152 Ariz. 61, 730 P.2d 238, 243 (App.1986) (citations omitted).

### Relinquishment of Fifth Amendment Rights

There were no fifth amendment implications in *Throop* and *Bain,* both civil cases, and in *Turrentine* the court considered none; it confined its analysis to relinquishment of the physician-patient privilege. However, courts have adopted an equivalent rationale in the fifth amendment context to uphold statutes that require a criminal defendant who asserts the insanity defense to submit to psychiatric or psychological examination by experts for the state. Arizona embodies this requirement in A.R.S. § 13-3993, which permits the state to counter the insanity defense by nominating the same number of medical doctors or licensed psychologists as will testify on behalf of the defendant. A.R.S. § 13-3993(A). If the defendant refuses to be examined by the mental health experts nominated by the state, the court "shall preclude the defendant from offering expert evidence of the defendant's mental state at the time of the alleged crime." A.R.S. § 13-3993(B).

The decisions of various federal circuit courts upholding similar requirements were explained in the following dictum by the United States Supreme Court in *Estelle:*

> When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist.

451 U.S. at 465, 101 S.Ct. at 1874, 68 L.Ed.2d at 370 (citations omitted). *See also United States v. Byers,* 740 F.2d 1104, 1111-12 (D.C.Cir.1984), which summarizes the circuit courts' decisions on this issue.

In *Byers* a defendant who asserted the insanity defense was compelled to submit

to examination by state-nominated psychiatrists, who testified at trial that he was not criminally insane at the time of his offense. The court held that the admission of statements to the state's psychiatrists by defendant that tended to negate his insanity defense did not violate his fifth amendment rights. The court declined, however, to base this holding on implied waiver. Former Circuit Judge Scalia wrote for the court:

What occurs is surely no waiver in the ordinary sense of a known and voluntary relinquishment, but rather merely the product of the court's decree that the act entails the consequence—a decree that remains to be justified.

*Id.* at 1113.

Instead of using the rationale of implied waiver, the court in *Byers* justified its decree starkly as necessary to the maintenance of "fair state-individual balance." To hold otherwise, it said, would have an "unreasonable and debilitating effect ... upon society's conduct of a fair inquiry into the defendant's culpability." *Id.*

As recognized in *Byers*, similar considerations of fair state-individual balance explain the decisions that a defendant who takes the stand on his own behalf may not decline on fifth amendment grounds to submit to cross-examination. *Id.* at 1114. *See, e.g., Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *Fitzpatrick v. United States*, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900); *State v. Peterson*, 107 Ariz. 268, 485 P.2d 1158 (1971). The United States Supreme Court said in *Brown* that a defendant

cannot reasonably claim that the Fifth Amendment gives him not only this choice [whether to testify or not] but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.... The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant,

and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination. 356 U.S. at 155–56, 78 S.Ct. at 626, 2 L.Ed.2d at 597.

*Implied Consent Under Rule 11.7(b)(1)*

The cases we have discussed converge in practical considerations of fairness and balance. These considerations apply as clearly in this case as they do in *Throop, Turrentine, Byers*, and *Brown*. A defendant who has been required to submit to a Rule 11 examination need not call the examining psychiatrist or psychologist as a witness at trial. If he chooses not to do so, the state may not place his statements to the Rule 11 examiner into evidence. However, to paraphrase the passage from *Brown* quoted above, a defendant cannot reasonably claim that Rule 11.7(b)(1) gives him not only the choice whether to call the Rule 11 examiner as a witness, but also, if he elects to do so, an immunity from cross-examination of the examiner on matters the defendant himself has put in dispute.

Rule 11.7(b)(1), grounded in the fifth amendment, precludes trial admission of defendant's statements to a Rule 11 examiner, except by his consent. We hold that, when defendant calls the Rule 11 examiner as a witness to assert the insanity defense, the courts will imply consent to a thorough cross-examination of the examiner, including disclosure of defendant's statements at the time of examination, to the extent that such statements relate to the issue of insanity or underlie the witness's opinion on that issue. Rule 705, Arizona Rules of Evidence.

We distinguish statements relating to the issue of insanity from statements wholly unrelated to that issue but tending to prove guilt. We restrict our holding of implied consent to the first category. Federal courts in parallel holdings have observed the same distinction. *See, e.g., Watters v. Hubbard*, 725 F.2d 381, 384–85 (6th Cir. 1984); *Noggle v. Marshall*, 706 F.2d 1408, 1416–17 (6th Cir.1983); *United States v. Madrid*, 673 F.2d 1114, 1120–21 (10th Cir. 1982); *United States v. Byers*, 740 F.2d at

1111 n. 8, 1115. We recognize, however, that evidence may overlap from one category to the next. As the court stated in *Noggle,*

> Evidence of a defendant's inculpatory statements during a psychiatric examination cannot be admitted to prove guilt. To hold otherwise would make the privilege against self-incrimination illusory. Moreover, such evidence should not be permitted to affect the jury's determination on that issue to any greater extent than is inherent in an insanity plea which unavoidably may contain an admission that defendant did the act but under circumstances for which he is not responsible.

706 F.2d at 1416.

The Arizona Supreme Court, sensitive to this problem of overlap, has held that, when the state calls the Rule 11 examiner to testify at trial on the issue of defendant's sanity, it may not introduce defendant's statements without his consent, even as bases for the opinion of sanity, because of their tendency to establish his commission of the crime. *E.g., Ulin v. Riddel,* 111 Ariz. 435, 532 P.2d 155 (1975); *State v. Freeman,* 114 Ariz. 32, 559 P.2d 152 (1976). Although these cases preclude the introduction of defendant's statements altogether when the *state* calls the witness to establish defendant's sanity, we distinguish, for reasons set forth earlier, the situation where the *defendant* calls the witness to establish his *insanity* and thereby exposes the witness to cross-examination.

### Ineffective Assistance of Counsel

■ We return to the defendant's claim that he received ineffective assistance of counsel because his attorney failed to preclude the testimonial introduction of his prejudicial statements to Dr. O'Brien. To show ineffective assistance of counsel the defendant must show, first, that counsel's performance was objectively unreasonable and, second, that there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would likely have resulted differently. In essence, the defendant must show that unreasonable representation prejudiced his right to a fair trial. *State v. Nash,* 143 Ariz. 392, 694 P.2d 222, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The defendant, having voluntarily called Dr. O'Brien as a defense witness on the issue of insanity, had no right to invoke the Rule 11.7(b)(1) privilege, the physician-patient privilege, or the fifth amendment to protect himself from cross-examination of Dr. O'Brien concerning defendant's statements bearing on that issue. It follows that counsel's failure to object or move in limine to preclude admission of such evidence did not affect the outcome of the trial; such an objection would have been properly overruled; such a motion would have been properly denied.

Finally, we note that the jury learned from a source independent of Dr. O'Brien that defendant was aware of the quantity of LSD that he had taken. While being transported to the Phoenix Police Department in the aftermath of the crime, defendant told arresting Officer Mauzy, "Yes, I'm spaced out, I took two tabs of—microtabs of LSD." We held in our previous memorandum decision that the trial court properly admitted Officer Mauzy's testimony to this effect. *State v. Tallabas,* 1 CA–CR 7792 (Ariz.App. mem. decision at 7, Apr. 25, 1985). Thus, evidence on this point would have reached the jury even if defendant's counsel had successfully attempted to keep it from the lips of Dr. O'Brien.

Because the defendant has not proven that counsel was ineffective, his petition for post-conviction relief is denied.

GRANT, P.J., and CONTRERAS, J., concur.