IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Petitioner*,

*v.*

THE HONORABLE HUGH HEGYI, Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

JOSH RASMUSSEN, *Real Party in Interest.*

No. 1 CA-SA 16-0075
FILED 6-23-2016

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2013-102236-002
The Honorable Hugh E. Hegyi, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Jeffrey R. Duvendack
*Counsel for Petitioner*

The Blumenreich Law Firm PLLC, Phoenix
By Joshua Blumenreich

Ballecer & Segal, LLP, Phoenix
By Natalee Segal
*Co-Counsel for Real Party in Interest*

―――――――――――――――

**OPINION**

Judge Maurice Portley delivered the Opinion of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia K. Norris joined.

―――――――――――――――

**P O R T L E Y**, Judge:

¶1        In this special action we are asked to determine whether the superior court should have granted the State's motion seeking disclosure of unredacted mental-health evaluations of the Real Party in Interest, Josh Rasmussen, who has raised a "guilty except insane" defense under Arizona Revised Statutes ("A.R.S.") section 13-502 (2010). Because this legal issue is of statewide importance, we accept jurisdiction, and grant relief.

**PROCEDURAL BACKGROUND**

¶2        Rasmussen and two co-defendants are charged with armed robbery and first-degree murder. Rasmussen hired John A. Moran, Ph.D., to evaluate his mental-health status. After the evaluation which questioned his sanity, Rasmussen began exploring a guilty-except-insane defense.

¶3        The State raised concerns about the Moran diagnosis, and Rasmussen agreed to be evaluated by a court-appointed psychologist. The superior court appointed D.J. Gaughan, Ph.D., to perform the evaluation. After the evaluation, Dr. Gaughan agreed Rasmussen met the guilty except insane criteria. Rasmussen, upon request, provided a copy of both doctors' notes and data to the State, but redacted statements he made to both psychologists.

¶4        The State then moved to compel disclosure of Rasmussen's redacted statements, arguing disclosure was required because he had raised the guilty-except-insane defense under A.R.S. §§ 13-502, -3993(D) (2010), -4508(B) (2010), and Arizona Rule of Criminal Procedure ("Rule") 11.7(a). Relying on *Austin v. Alfred*, 163 Ariz. 397, 788 P.2d 130 (App. 1990), Rasmussen successfully argued he was only required to produce copies of the doctors' records with his statements redacted. This special action followed.

## JURISDICTION

**¶5**          Our decision to accept special action jurisdiction is "highly discretionary." *State ex rel. Romley v. Fields*, 201 Ariz. 321, 323, ¶ 4, 35 P.3d 82, 84 (App. 2001). Special action jurisdiction is appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists, Ariz. R.P. Spec. Act. 1(a), or when the issue involves a matter of first impression, statewide significance, or pure questions of law. *Romley*, 201 Ariz. at 323, ¶ 4, 35 P.3d at 84 (citation omitted). Because the issue of whether a defendant who raises a guilty-except-insane defense has to disclose statements he made to a mental-health evaluator is a legal issue of statewide importance, we accept special action jurisdiction.

## DISCUSSION

**¶6**          The State argues that the superior court abused its discretion by following *Austin* and denying its motion to compel. The State specifically argues *Austin* is inconsistent with case law, statutes, and the rules of criminal procedure.

**¶7**          In *Austin*, this court granted special action relief from a ruling requiring a criminal defendant to disclose the names and reports of all mental-health experts he had retained in anticipation of an insanity defense. 163 Ariz. at 398, 788 P.2d at 131. After reviewing Austin's four arguments,[1] *id.* at 399-403, 788 P.2d at 132-36, this court found, as relevant here, "the trial court properly required disclosure of the names and reports of mental health experts retained by [the defendant], but failed to shield from disclosure statements made by [the defendant] concerning the offenses," *id.* at 403, 788 P.2d at 136.

**¶8**          Although *Austin* has remained unchallenged, its premise was based on the insanity affirmative defense, that is, not guilty by reason of insanity, *State v. Fletcher*, 149 Ariz. 187, 192, 717 P.2d 866, 871 (1986) (stating that insanity is an affirmative defense) (citation omitted), which has been statutorily modified to "guilty except insane," *see* 1993 Ariz. Sess. Laws, ch.

---

[1] Austin raised the following arguments: (1) whether Rule 11.4 only required disclosure of the experts and reports to be used at trial; (2) whether the order impermissibly required disclosure of Austin's statements about the charged offenses; (3) whether his consultations with the mental-health experts were protected by the work-product doctrine; and (4) whether his consultations were protected by the attorney-client privilege. *Austin v. Alfred*, 163 Ariz. 397, 399, 788 P.2d 130, 132 (App. 1990).

256, § 3 (1st. Reg. Sess.); *see also* Renée Melançon, *Arizona's Insane Response to Insanity*, 40 Ariz. L. Rev. 287, 294-300, 303-304 (1998). After *Austin* was decided, the legislature removed the first part of the two-part insanity defense announced in *M'Naghten's Case*, 8 Eng. Rep. 718 (1843), which inquired into the person's cognitive capacity; that is, whether a mental defect leaves a defendant unable to understand what he is doing. *Clark v. Arizona*, 548 U.S. 735, 747-48 (2006). What remains is the second part of the *M'Naghten* test; namely, "moral capacity," which requires the defendant to demonstrate by clear and convincing evidence "that at the time of the commission of the criminal act [the defendant] was afflicted with a mental disease or defect of such severity that [the defendant] did not know the criminal act was wrong." *Id.* at 748 (internal quotation marks and citation omitted); *see* A.R.S. § 13-502(A), (C).

**¶9**     Given the change in law after *Austin*, we review Rules 11.4 and 11.7 to determine whether the State is entitled to the mental-health reports without any redaction of Rasmussen's statements to the doctors. We review the interpretation of court rules de novo, *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 544, ¶ 6, 189 P.3d 1114, 1117 (App. 2008) (citation omitted), and interpret court rules using the same principles applicable to the interpretation of statutes, *Fragoso v. Fell*, 210 Ariz. 427, 430, ¶ 7, 111 P.3d 1027, 1030 (App. 2005) (citation omitted).

**¶10**     Moreover, when interpreting rules and statutes, they "should be harmonized wherever possible and read in conjunction with each other." *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) (quoting *Phoenix of Hartford, Inc. v. Harmony Rests., Inc.*, 114 Ariz. 257, 258, 560 P.2d 441, 442 (App. 1977)). However, if a statute and a rule conflict, and the matter regulated is substantive, as opposed to procedural, the statute must prevail. *See Seisinger v. Siebel*, 220 Ariz. 85, 92, ¶ 26, 203 P.3d 483, 490 (2009); *Hansen*, 215 Ariz. at 289, ¶ 9, 160 P.3d at 168 ("[W]hen a statute and rule conflict, we traditionally inquire into whether the matter regulated can be characterized as substantive or procedural, the former being the legislature's prerogative and the latter the province of this Court.").

**I**

**¶11**     Once the insanity defense is raised, A.R.S. § 13-3993 (2010) allows the defendant to be examined, and removes any physician-patient

privilege[2] as to any communication made "as it relates to the defendant's mental state at the time of the alleged crime." A.R.S. § 13-3993(A), (C). The statute also provides that:

> If any mental disability defense is raised, both the state and the defendant shall receive prior to the trial complete copies of any report by a medical doctor or licensed psychologist who examines the defendant to determine the defendant's mental state at the time of the alleged crime or the defendant's competency.

A.R.S. § 13-3993(D).

## II

**¶12**        The statute does not address a defendant's privilege against self-incrimination under the Fifth Amendment to the United States Constitution. That constitutional privilege is embodied in Rule 11.7, which provides that "no [statement of the defendant obtained under these provisions, or evidence resulting therefrom] . . . shall be admissible at any proceeding to determine guilt or innocence unless the defendant presents evidence intended to rebut the presumption of sanity." Ariz. R. Crim. P. 11.7(a)-(b)(1); *State v. Fitzgerald*, 232 Ariz. 208, 216, ¶ 43, 303 P.3d 519, 527 (2013) (indicating, by citing to *State v. Tallabas*, 155 Ariz. 321, 746 P.2d 491 (App. 1987), that Rule 11.7 is grounded in the Fifth Amendment's privilege against compelled self-incrimination).

**¶13**        Although Rule 11.7 protects a defendant's privilege against self-incrimination, the rule also recognizes that a defendant can consent to the use of those statements. Ariz. R. Crim. P. 11.7(b)(1) (stating that a defendant's statement cannot be admitted "at the trial of guilt or innocence . . . without his or her consent"); *Tallabas*, 155 Ariz. at 323, 746 P.2d at 493. For example, in *Tallabas*, after stating that "Rule 11.7(b)(1) codifies the

---

[2] The physician-patient privilege, A.R.S. § 12-2235, is a statutorily created substantive right, *Benton v. Superior Court*, 182 Ariz. 466, 469, 897 P.2d 1352, 1355 (App. 1994) (noting "there was no physician-patient privilege at common law.") (citation omitted). As such, it can be waived by statute. *See In re Shane B.*, 198 Ariz. 85, 88, ¶ 9, 7 P.3d 94, 97 (2000) (stating "a substantive law creates, defines, and regulates rights while a procedural one prescribes the method of enforcing such rights or obtaining redress.") (citations omitted).

holding that it is fundamentally unfair for a court-appointed psychiatrist after compulsory examination to transmit a defendant's incriminating statements to the jury," we held that if a defendant calls a doctor to prove insanity, the defendant consents to the "prob[ing] and test[ing of] the bases of the doctor's opinion of insanity and expos[ing] any statements by defendant to the doctor insofar as they underlay or relate[] to that opinion." 155 Ariz. at 323, 746 P.2d at 493; *see also Fitzgerald*, 232 Ariz. at 217, ¶ 44, 303 P.3d at 528 (stating defendant "waived his privilege against compelled self-incrimination and any protections under Rule 11.7 by offering evidence relevant to his mental health during the second penalty-phase trial"). Our holding in *Tallabas* was consistent with the concept that a defendant "may not use the privilege as both a sword and a shield . . . by asserting a particular factual position and then invoking the privilege not only to buttress such a position but also to prevent the opposing party from impeaching or otherwise challenging it." *State v. Wilson*, 200 Ariz. 390, 396, ¶ 16, 26 P.3d 1161, 1167 (App. 2001) (internal quotes and citations omitted). As a result, "waiver can be implied when a party injects a matter that, in the context of the case, creates such a need for the opponent to obtain the information allegedly protected by the privilege that it would be unfair to allow that party to assert the privilege." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 61, ¶ 23, 13 P.3d 1169, 1178 (2000)); *Tallabas*, 155 Ariz. at 324, 746 P.2d at 494 (citation omitted).

### III

**¶14**        Rasmussen relies on *Austin* to preclude the disclosure of his voluntary statements to his expert, as well as statements he made to the court-appointed expert, which he might use to support his affirmative defense. We review *Austin* in light of Rasmussen's notice that he plans to assert the affirmative defense of guilty except insane.

**¶15**        *Austin* examined the provisions of Rule 11.4, which is entitled "[d]isclosure of mental health evidence." *Austin* found that Rule 11.4(a), involving the reports of appointed experts, precludes the disclosure of a defendant's statements to a court-appointed expert and requires that any inculpatory statements be redacted from that expert's report. 163 Ariz. at 400, 788 P.2d at 133. *Austin* then turned to subsection (b), which applies to other experts, that is, non-court-appointed experts, and found the provision does not require a defendant's statements to be redacted before being disclosed. *Id. Austin* then saw "no reason why subsection (b) should not provide the same safeguard against disclosure as subsection (a)" because "[n]o basis exists for disparate treatment of statements made to a court-

6

appointed expert and those made to an expert retained by the defendant."
*Id.*

**¶16**       We find no basis for the conclusion in *Austin* that Rule 11.4(b) necessarily must be construed like Rule 11.4(a).  First, there was no analysis leading to the statement.  Second, there is a real difference between the two provisions.  A defendant who voluntarily makes statements to a non-court-appointed expert is not being compelled by a court order to participate in the mental-health examination, and the privilege against self-incrimination is not implicated.  *Compare Phillips v. Araneta*, 208 Ariz. 280, 284, ¶ 14, 93 P.3d 480, 484 (2004) (stating that a trial judge ordering a defendant to participate in a mental-health examination must protect the defendant's privilege against incrimination by ensuring no statement made by the defendant may be used by the prosecution) *with State ex rel. Hyder v. Superior Court (Realtor)*, 128 Ariz. 253, 256, 625 P.2d 316, 319 (1981) (noting that a communication is compelled when "when an individual is forced to make [a] . . . communicative act").

**¶17**       Moreover, this court's role was not to try to guess why our supreme court had adopted a different rule for non-appointed experts.  *See State v. Christian*, 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003) ("When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the [drafter's] intent because its intent is readily discernable from the face of the statute."); *Fragoso*, 210 Ariz. at 430, ¶ 7, 111 P.3d at 1030 (stating we interpret rules using tools of statutory interpretation) (citation omitted).  And it was not the court's role to re-write the rule by inserting a provision from a different subsection.  *See Potter v. Vanderpool*, 225 Ariz. 495, 500, ¶ 13, 240 P.3d 1257, 1262 (App. 2010) (stating court may not "insert[] words into the rule that do not exist.") (relying on *Cervantes v. Cates*, 206 Ariz. 178, 184, ¶ 24, 76 P.3d 449, 455 (App. 2003)); *Bigelsen v. Ariz. State Bd. of Med. Exam'rs*, 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App. 1993) (declining to read term into statutory provision when legislature has included the term in some places within the statute, and excluded it in another).  Instead, the court's role was to determine the drafter's intent by examining the plain language of the rule in order to determine whether the trial court had misinterpreted the rule in ordering disclosure of the medical records.  *See Fragoso*, 210 Ariz. at 430, ¶ 7, 111 P.3d at 1030.

**¶18**       If our supreme court had intended to allow a defendant's statement to a non-court-appointed mental-health expert to be redacted from the expert's reports, we presume the court knew how to include that requirement because the redaction provision was inserted in Rule 11.4(a).

*See Potter*, 225 Ariz. at 499-500, ¶ 13, 240 P.3d at 1261-62 (stating we will not insert words into the rule that do not exist, and will presume supreme court would have explicitly stated that a provision applied if it intended to include it in the rule). For these reasons, we depart from *Austin* in concluding that a defendant who is examined by a non-court-appointed expert cannot, after giving notice of the guilty-except-insane defense, as a matter of law, redact his statements from his expert's report under Rule 11.4(b).

**IV**

**¶19**    We now turn to this matter. A defendant who undergoes a court-ordered mental-health examination has a Fifth Amendment privilege against self-incrimination, and any statement to the examiner about the facts in the case shall be redacted. *See* A.R.S. § 13-4508(A), (C) (2010); Ariz. R. Crim. P. 11.4(a). If, however, a defendant gives notice under Rule 15.2(b) that he will raise the guilty-except-insane defense, the defendant must provide the complete and unredacted report from any non-court-appointed expert. *See* Ariz. R. Crim. P. 11.4(b).

**¶20**    Accordingly, Rasmussen will have to provide an unredacted copy of the court-appointed expert's report under Rule 15.2(c). Following our guidance in *Tallabas*, a court "will imply consent" to any evidence relating to the expert's report, "including disclosure of defendant's statements at the time of examination, to the extent that such statements relate to the issue of [guilty except insane]," 155 Ariz. at 325, 746 P.2d at 495, and which also includes the defendant's statements that he or she did not know the criminal act was wrong under § 13-502. *See also* A.R.S. § 13-4508(B) ("Any evidence or statement that is obtained during an examination is not admissible . . . unless the defendant presents evidence that is intended to rebut the presumption of sanity."). Moreover, the disclosure is a matter of fundamental fairness, so that the State can be prepared to address the affirmative defense at trial. *See Wardius v. Oregon*, 412 U.S. 470, 475 (1973) (noting that "discovery must be a two-way street").

**¶21**    Finally, although the unredacted mental-health reports with Rasmussen's statements can be disclosed, the State cannot use them at trial to prove any element of its case beyond a reasonable doubt. *See Fletcher*, 149 Ariz. at 192, 717 P.2d at 871. In accordance with *Tallabas*, at trial the State may only use the defendant's statements at the time of the examination to the extent such statements relate to whether the defendant was guilty except insane or underlie the examiner's opinion on that issue. 155 Ariz. at 325, 746 P.2d at 495. Evidence of a defendant's inculpatory

statements may not be admitted at trial to prove guilt. *Id*. at 326, 746 P.2d at 496 (citation omitted). Consequently, because Rasmussen has given notice that he is raising the affirmative defense of guilty except insane, we grant relief, reverse the ruling denying the State's motion to compel, and direct the superior court to order Rasmussen to provide a complete and unredacted copy of his expert's report to the State, as well as a complete and unredacted report from the court-appointed expert to allow the State to prepare to meet the affirmative defense.

## CONCLUSION

**¶22** Based on the foregoing, we accept special action jurisdiction, grant relief by reversing the superior court's order denying the State's motion to compel disclosure of the complete, unredacted reports of the two doctors, and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA