681 P.2d 374

**STATE of Arizona, Appellee,**

v.

**Gerard Gregory SCHULTZ, Appellant.**

No. 5597.

Supreme Court of Arizona,
En Banc.

April 10, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Mark Meltzer, Phoenix, for appellant.

HAYS, Justice.

A jury convicted defendant of aggravated assault, A.R.S. § 13–1204, burglary in the first degree, A.R.S. § 13–1508, and two counts of first degree murder, A.R.S. § 13–1105. The trial judge sentenced defendant to 15 years imprisonment for the assault, 15 years for the burglary, and life for each murder, with the second life sentence to run consecutively to the other three sentences determined to run concurrently with each other. Defendant appealed to this court. Defendant also filed with the superior court a petition for post-conviction relief, pursuant to Rules of Criminal Procedure, rule 32. After an evidentiary hearing before the superior court, that court denied relief. In accord with Rules of Criminal Procedure, rule 32.9(c), defendant petitioned this court for review of that decision. Pursuant to Rules of Criminal Procedure, rule 31.4(b)(2), that petition for review was consolidated with defendant's appeal.

Several issues confront us. We hold that defendant was denied his right to effective assistance of counsel. Because we therefore reverse the decision of the trial court and remand this case for a new trial, we

need not address the other issues presented. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 13–4031, and A.R.S. § 13–4035.

On November 16, 1981 the defendant drove to the Farmer's Liquor Store. Accompanying defendant in defendant's car was Michael Rodriguez. Defendant entered the store; Rodriguez entered the store either with defendant or shortly thereafter. The store clerk, Fred Gonzales, and his friend, Henry Walker, were watching television. Gonzales and defendant knew each other, and on several occasions Gonzales had given defendant discounts on beer. Defendant said he wanted to talk with Gonzales. Defendant then picked up a sledgehammer that was next to a freezer in the store and began beating Gonzales on the head and chest with it. While defending himself, Gonzales yelled for Walker to hit the alarm button on the cash register. At that point Rodriguez shot Walker three times and then went to the back of the store, where the battle between defendant and Gonzales had moved. Rodriguez tried to shoot Gonzales, but Gonzales grabbed the gun, making Rodriguez miss. Gonzales was able to run to the front of the store, hit the alarm, and attempt to retrieve a gun kept under the cash register. The defendant, however, grabbed the gun first. Gonzales was then struck repeatedly with the sledgehammer (apparently by Rodriguez this time) and the gun. Although defendant never fired a shot, he then told Rodriguez to shoot Gonzales. Rodriguez tried, but the gun did not go off. Several police officers in the area heard the initial gunshots fired at Walker and had seen Walker run from the store, collapse, and die. One of the officers yelled to the offenders. Rodriguez then ran from the store with gun poised and when he pointed it in the officers' direction was shot and killed. The defendant closely followed Rodriguez from the store and also was shot.

█ The defendant contends he was denied the constitutional right to effective assistance of counsel. The standard for determining whether assistance was effective is "whether under the circumstances the attorney showed at least minimal competence in representing the criminal defendant." *State v. Watson*, 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). The defendant must demonstrate ineffective assistance by a preponderance of the evidence. *See id.* at 5, 653 P.2d at 355.

Defendant sets forth numerous examples of trial counsel's alleged ineffectiveness. A number of these allegations are totally without merit. Several involve possible errors in trial tactics. Such "errors" do not support an ineffectiveness claim. *See id.* at 4, 653 P.2d at 354. One of defendant's examples, however, has merit. That example of ineffective assistance concerns the pretrial investigation by trial counsel.

█ Trial was scheduled to commence on February 9, 1982. On that date, counsel moved for a continuance, stating that there were "at least thirty" potential witnesses, and that he needed more time "because of the amount of witnesses or potential witnesses to be interviewed." Thirty-four days later, on the date to which the trial was continued, counsel moved for another continuance, stating that the police reports revealed "at least twenty potential witnesses that the State might call and I just haven't had the opportunity to talk with all the witnesses ...." The trial date was then set for thirty-five days later. On that date, during the jury voir dire, the judge discussed with potential jury members twelve names of potential witnesses. Subsequently, at the rule 32 evidentiary hearing, where trial counsel's effectiveness was an issue, counsel testified that he did not interview any potential witnesses except his client and Gonzales, a victim. Counsel said he might have interviewed police officers just before they testified, but did not recall. He said he definitely did not interview any officers before the trial.

From these facts, we conclude that either counsel was being less than candid with the court about the reason for the need for the continuances, or counsel recognized that important pretrial investigation needed to

be conducted and then neglected to do so. We find both alternatives unpalatable. Counsel has a duty to be truthful with the court. Counsel also has a duty to investigate and "explore all avenues leading to facts relevant to the merits of the case ...." A.B.A. Standards for Criminal Justice, standard 4–4.1.

In addition to the fact that trial counsel did not interview any of the witnesses he represented to the court existed, defendant urges that counsel was deficient in other investigative efforts as well. The defendant's major defense at trial was that voluntary intoxication negated the mental states required for the crimes charged. *See* A.R.S. § 13–503. Although trial counsel 1) examined at trial the defendant and Gonzales regarding phencyclidine (PCP) consumption by defendant, 2) considered the use of a PCP expert (but dropped the idea after concluding that such an expert's testimony would be inadmissible at trial), and 3) requested an intoxication instruction, defendant points out several investigatory leads counsel failed to develop that might have enhanced his testimony that he could not remember all of the incident because he had ingested PCP. The importance of additional information about defendant's intoxication was revealed when 52 minutes into its deliberation the jury asked "[c]an we have any evidence as to whether Mr. Schultz did have drugs in his blood—at the hospital—what was the blood alcohol on Mr. Schultz."

Defendant testified that he had been drinking beer before the crime and that while driving to the liquor store he and Rodriguez ingested PCP. By affidavit defendant's appellate counsel stated that the police reports (which are not in the record) indicate that a Detective Martin interviewed a Mrs. Esperanza Villa, the mother of Rodriguez, and she said her daughter's boyfriend and defendant had been drinking on the date of the offense. Although trial counsel indicated several times in the record that he had read the police reports, he never interviewed Mrs. Esperanza Villa or her daughter's boyfriend. Apparently no investigative work was conducted by counsel to find out how much beer defendant drank on the day of the crime and over what period of time. In fact, at trial, defendant's counsel never questioned defendant, or anyone else, regarding defendant's consumption of alcohol; rather, the state brought out that information from defendant on cross-examination. Trial counsel questioned defendant, and Gonzales, only about PCP.

Another avenue not developed was whether Rodriguez had used PCP in the past, and whether he actually did have PCP with him on the day of the crime. Defendant testified he had never ingested PCP until just before the incident, while he and Rodriguez were driving to the liquor store. Defendant also testified that he and Rodriguez smoked a marijuana cigarette on the way to the store, and when he began feeling effects he had never felt before he asked Rodriguez what the substance was, and Rodriguez informed him it was PCP. Investigation about Rodriguez' past use of PCP and defendant's lack of use, and investigation about Rodriguez' possession of PCP on the day of the crime, would have enhanced defendant's testimony.

In addition to background information and events occurring the day of the crime, police officers at the scene and investigative police officers were not interviewed. Appellate counsel's affidavit states that Detective Martin interviewed defendant in the hospital emergency room, and Martin's report states that defendant kept saying he could not remember what had happened and that he had been smoking "sherms" (established at trial as a street name for PCP). Also, an Officer Laird spoke to defendant in his hospital room a few hours after the incident and defendant told Laird "that Rodriguez and him had been smoking 'sherm' and he didn't remember what had happened." Although trial counsel apparently read the police reports, he did not interview Detective Martin or Officer Laird.

Finally, even though trial counsel knew that defendant was taken to the hospital

just after the incident, none of the medical personnel was examined. A nurse present in the emergency room when defendant was brought in testified at the rule 32 evidentiary hearing that defendant acted bizarrely, appeared to be under the influence, and kept saying something sounding like "Sures or Sherms." Further, although the state pointed out on cross-examination that the hospital report states that defendant's level of consciousness was awake and alert, this nurse testified that defendant demonstrated varied speech (clear for awhile and then slurred) and mood swings (he would become agitated and then "mellow out" and "drift away"). Finally, this nurse testified that other personnel in the emergency room also heard defendant say he did not remember what had happened and that he had used drugs.

In addition to hospital personnel who treated defendant, trial counsel never interviewed Dr. Karnitschnig, the doctor who performed postmortem exams on Rodriguez and Walker, even though trial counsel knew that such exams had been conducted. Trial counsel also did not question Dr. Karnitschnig on this point while he was testifying at trial as a state's witness. Rodriguez' body could have been tested for the presence of intoxicants. If it had been established that, as defendant claimed, Rodriguez and defendant had been with one another during the day of the crime, evidence of intoxicants in Rodriguez' blood might have been admissible, and enhanced defendant's testimony.

We wish to emphasize that we are not simply engaging in twenty-twenty hindsight review of trial counsel's investigatory conduct. Rather, counsel twice represented to the trial court that there were at least twenty or thirty witnesses to be interviewed and then he proceeded to interview none of them. Counsel used the fact that he had many people to interview as the ground for gaining trial continuances. We realize that "proof of ineffectiveness must be a demonstrable reality and not merely a matter of speculation." *State v. Tison,* 129 Ariz. 546, 556, 633 P.2d 355, 365 (1981),

*cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Much of the potential evidence we discussed, however, was brought out in the rule 32 evidentiary hearing or was presented by affidavit of appellate counsel; its existence is not a mere matter of speculation. By reviewing the potential evidence not developed by counsel, we merely try to point out that, as trial counsel indicated to the court, there were many people that could have been interviewed, and the failure to obtain evidence from these people was not harmless because it might have shown defendant's pre-crime activity, his post-crime actions, and post-crime physical evidence of intoxicants in his body. All this evidence might have enhanced defendant's testimony that he had ingested enough alcohol and PCP so that he was without the required mental state or culpability for the offenses of which he was convicted.

The judgments of conviction and sentences are reversed and the case is remanded for a new trial.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.