788 P.2d 130

Mark AUSTIN, Petitioner,

v.

The Honorable Michael ALFRED, a Judge for The Superior Court of the State of Arizona, County of Pima, Respondent,

and

The STATE of Arizona, Real Party in Interest.

No. 2 CA–SA 90–0002.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 27, 1990.

Hirsh, Sherick & Murphy, P.C. by Robert J. Hirsh, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Charles L. Jenkins, Tucson, for real party in interest.

## OPINION

ROLL, Presiding Judge.

Petitioner Mark Austin seeks special action relief from the respondent judge's granting of the real party in interest State of Arizona's motion to compel disclosure of names and reports of mental health experts retained by Austin in anticipation of an insanity defense. For the reasons stated below, we accept jurisdiction and grant partial relief, narrowing the scope of the trial court's disclosure order.

## FACTS

Austin was charged by indictment with first-degree murder, attempted first-degree murder, aggravated assault, and first-degree burglary. Austin submitted to several examinations by mental health experts. After Austin informed the state that he intended to raise an insanity defense, he disclosed only the names and reports of those experts he intended to call as witnesses at trial. The state filed a motion to compel disclosure, seeking the names and

reports of all mental health experts who examined him, relying upon A.R.S. § 13–3993(D) and Rule 11.4(b), Ariz.R. Crim.P., 17 A.R.S. Austin opposed the state's motion. Ultimately, the respondent judge ordered Austin to

> disclose the names and addresses of any and all mental health experts who have personally examined the Defendant or any evidence in this case, together with the results of mental examinations and scientific tests, experiments or comparisons, including all written reports or statements made by said experts in connection with this case.

This special action followed.

### ISSUES PRESENTED

In this special action Austin argues that (1) Rule 11.4(b) requires the defense to disclose only the names and reports of those mental health experts who will be called as defense witnesses; (2) the trial court's order impermissibly requires disclosure of Austin's statements concerning the offenses with which he is charged; (3) his consultations with mental health experts are protected as work product; and (4) such consultations are also protected by the attorney-client privilege.

### JURISDICTION

There are no reported Arizona decisions dealing directly with the issues presented by this special action. Because the matter is of statewide importance, we accept jurisdiction. *See* Rule 1, Ariz.R.P.Spec.Action, 17B A.R.S.; *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Davis v. Winkler,* 164 Ariz. ——, 793 P.2d 99 (Ct.App. Jan. 9, 1990).

### STANDARD OF REVIEW

All issues raised by Austin are questions of law and are reviewed *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966); *Aldabbagh v. Department of Liquor Licenses,* 162 Ariz. 415, 418, 783 P.2d 1207, 1210 (App.1989).

### RULE 11.4

■ Austin argues that Rule 11.4(b), Ariz.R.Crim.P., 17 A.R.S., requires only that the names and reports of defense mental health experts *who will testify at trial* be disclosed to the state. Rule 11.4 provides in part:

> a. Reports of Appointed Experts. The reports of experts made pursuant to Rule 11.3 shall be made available to all parties, except that any statement or summary of the defendant's statements concerning the offense charged shall be made available only to the defendant.
> b. Reports of Other Experts. Both parties shall make available to the opposite party for examination and reproduction the names and addresses of mental health experts who have personally examined a defendant or any evidence in the particular case, together with the results of mental examinations and of scientific tests, experiments or comparisons, including all written reports or statements made by them in connection with the particular case.

We disagree with the interpretation suggested by Austin. Fairly construed, this rule permits discovery of all information set forth in the rule and does not limit the required disclosure to those experts who will be called as witnesses and have prepared reports in anticipation of testimony. This construction is reinforced by the provisions of A.R.S. § 13–3993:

> If any mental disability defense is raised, both the state and the defendant shall receive prior to the trial complete copies of any report by a medical doctor or licensed psychologist who examines the defendant to determine his mental state at the time of the offense or his competency.

This is not to say, however, that disclosure of the entire contents of such reports are not subject to other restrictions.

### DISCLOSURE OF STATEMENTS REGARDING THE OFFENSES

■ Austin argues that the trial court's order impermissibly requires disclosure of

all statements made by him to the experts he retains, including any statements regarding the charged offense. Austin argues that disclosure of such statements is prohibited by Rule 1.2, Ariz.R.Crim.P., 17 A.R.S.,[1] and *State v. Decello*, 113 Ariz. 255, 550 P.2d 633 (1976). Rule 1.2 is of little assistance as far as this specific issue is concerned. In *Decello*, the supreme court found that providing the county attorney with a psychiatric report containing the defendant's statements about the murder offense with which the defendant had been charged constituted error even though the statements were not introduced at trial. 113 Ariz. at 257, 550 P.2d at 635. *See also State v. McDonald*, 117 Ariz. 159, 160, 571 P.2d 656, 657 (1977); *State v. Ramirez*, 116 Ariz. 259, 270, 569 P.2d 201, 212 (1977) (error to disclose to prosecutor "certain statements of the appellant's in [the psychiatrist's] report which should have been excised").

*Decello, McDonald* and *Ramirez* all involved disclosure of defendants' statements contained in reports of *court-appointed* mental health experts. Rule 11.4(a) expressly exempts from disclosure a defendant's statements made to a court-appointed mental health expert. In the matter before us, the reports were prepared by experts retained by the defense rather than court-appointed defense experts. Subsection (b), which encompasses retained experts, contains no similar exemption for such reports. However, we see no reason why subsection (b) should not provide the same safeguard against disclosure as subsection (a). No basis exists for disparate treatment of statements made to a court-appointed expert and those made to an expert retained by the defendant. Moreover, since the statements may not be used at trial, Rule 11.7, Ariz.R.Crim.P., 17

A.R.S., there is no justification for requiring that they be disclosed.[2]

The respondent judge's order must be modified to prohibit disclosure of any statement or summary of Austin's statements concerning the offenses. The reports should be submitted to the trial court for *in camera* review so that the trial court can excise Austin's statements concerning the offenses.

## WORK PRODUCT

 Austin contends that in order to withstand constitutional scrutiny, Rule 11.-4(b) must be read in conjunction with Rule 15.4(b)(1). Rule 15.4(b)(1) codifies the work product principle that originated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *State ex rel. Corbin v. Ybarra*, 161 Ariz. 188, 191, 777 P.2d 686, 689 (1989). Rule 15.4(b)(1) provides:

b. Materials Not Subject To Disclosure

(1) Work Product. Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecutor, members of his legal or investigative staff or law enforcement officers, or of defense counsel or his legal or investigative staff.

Relying upon *Ybarra* for the principle that the work product of an attorney's expert is also counsel's work product, Austin contends that the work product of all non-testifying mental health professionals retained by him must be treated as counsel's work product. Austin contends that (1) the work product protection was not waived because he is not calling these experts as witnesses, and (2) both parties have equal access to the same information, *i.e.*, the

---

1. Rule 1.2 provides:

These rules are intended to provide for the just, speedy determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, the elimination of unnecessary delay and expense, and to protect the fundamental rights of the individual while preserving the public welfare.

2. In light of this holding, we need not address the question of whether, in the absence of Rule 11.4 and *Decello* and its progeny, compulsory disclosure of a defendant's statements made concerning the offense would violate the defendant's right against self-incrimination. *But see United States ex rel. Edney v. Smith*, 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd without opinion*, 556 F.2d 556 (2d Cir.), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977).

state may retain its own expert to evaluate the defendant.

The general discovery provisions of Rule 15 were not intended to limit the specific procedures set forth under Rule 11. By its own terms, Rule 15 applies to "all discovery under this rule." Rule 15.4, Ariz.R. Crim.P., 17 A.R.S. The rules must be read together in a manner that will not render either of them redundant or contradictory. *Cf. City of Mesa v. Salt River Project Agric. Improvement & Power Dist.*, 92 Ariz. 91, 98, 373 P.2d 722, 727 (1962); *Cochise County v. Borowiec*, 162 Ariz. 192, 196, 781 P.2d 1379, 1383 (1989). The rules were clearly intended to provide procedures for different circumstances, with Rule 11 applying to the more specific situation where an accused's mental status is at issue. This interpretation recognizes, as the *Ybarra* court noted, that "[t]he work product doctrine is not absolute. Like any qualified privilege, a defendant may waive all or part of the protection...." *Ybarra*, 161 Ariz. at 193, 777 P.2d at 691. Thus, even if the disclosure ordered comes within the purview of the work product doctrine, protection of such work product is waived where an insanity defense is raised.

Austin raises the related argument that the respondent judge's order violates Austin's right to counsel under both the federal and state constitutions. Austin contends that counsel's duty to investigate the charges and prepare for trial are seriously impeded as a consequence of disclosing the names and reports of retained experts, *citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Draper*, 162 Ariz. 433, 784 P.2d 259 (1989); and *State v. Schultz*, 140 Ariz. 222, 681 P.2d 374 (1984). Because any statements made by Austin regarding the offenses will be excised, however, counsel's efforts will not be hampered.

The balancing test employed in *United States ex rel. Edney v. Smith*, 425 F.Supp. 1038 (E.D.N.Y.1976), *aff'd without opinion*, 556 F.2d 556 (2d Cir.), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977), is useful in considering the opposing interests presented here. *See also State v.*

*Bonds*, 98 Wash.2d 1, 19–21, 653 P.2d 1024, 1035 (1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983). In *Smith*, the court addressed the question of whether the admission of the testimony of a physician called by the prosecution, which physician had been consulted by the defendant in connection with an insanity defense, violated his federal constitutional rights. The court balanced the use of the information and the possible prejudice to the defendant against the "strong counterbalancing interest of the State in accurate fact-finding...." 425 F.Supp. at 1054. The court rejected the notion that the defendant should be allowed to produce psychiatric evidence showing he was not responsible for his criminal acts because of a mental disease or defect while simultaneously precluding the prosecution from offering an expert witness, whose opinion was unfavorable to the defendant, simply because the expert had been retained by defendant's counsel. 425 F.Supp. at 1052. Balancing the competing interests presented here, and in view of protection of Austin's statements concerning the offenses charged, we conclude that the work product principle does not bar disclosure of the names and reports of retained defense experts.

## ATTORNEY–CLIENT PRIVILEGE

■ Austin next argues that because the experts have been retained by defense counsel in preparing the accused's defense, they are counsel's agents and therefore the names of the experts as well as any communications made to them are protected by the attorney-client privilege. He claims that the compelled disclosure violates the attorney-client privilege and infringes upon his right to counsel guaranteed by the federal and state constitutions, by impeding the investigatory process and inhibiting defendants from making full disclosure to counsel and counsel's experts.

Although there are no reported Arizona decisions which directly address this issue in criminal prosecutions, it has been addressed in a civil context. In *Granger v. Wisner*, 134 Ariz. 377, 656 P.2d 1238 (1982), the supreme court vacated the opinion of

the court of appeals and affirmed the trial court which had granted judgment for the defendant, a plastic surgeon, after allowing a physician who had previously been consulted by the plaintiff to testify at trial on behalf of the defendant. In concluding that the trial court did not err by permitting the plaintiff's doctor to testify for the defense, the supreme court stated that the attorney-client privilege was not meant to "prevent a party from calling an adversary's expert to testify and examining the expert about his or her opinions and the observations, knowledge, information, and theories on which the opinions are based." 134 Ariz. at 380, 656 P.2d at 1241.

*United States ex rel. Edney v. Smith,* *supra,* addressed the question in a criminal setting. The court concluded that it was unjust and inequitable to preclude the government from calling as a witness a psychiatrist retained by the defense:

> In essence, defendant insists that he should have been permitted to produce psychiatric evidence to the effect that he was not responsible for his criminal acts by reason of mental disease or defect, while at the same time he precludes the State from offering an expert witness, who had formulated a contrary opinion, simply because the latter had examined defendant at the behest of a former defense counsel as opposed to being court-appointed or retained by the prosecution. Thus, defendant suggests that he be permitted to suppress any unfavorable psychiatric witness whom he had retained in the first instance, under the guise of attorney-client privilege, while he endeavors to shop around for a "friendly" expert, and takes unfriendly experts off the market.
>
> Certainly defendant would have called [the psychiatrist] had his opinion been favorable to defendant's position. Just as clearly, under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), had the government retained [the psychiatrist] initially and had he found defendant to be insane, the prosecutor would have been under a legal obligation to disclose this information to his adversary. Nonetheless, petitioner asserts

that the trier of fact in this case at bar must, as a matter of constitutional law, be deprived of the opportunity to obtain complete insight into the defendant's claim of insanity merely because one of the expert witnesses who had examined him had done so at the request of one of defendant's former attorneys.

*Smith,* 425 F.Supp. at 1052.

As discussed in our analysis of the work product doctrine, the *Smith* court adopted a balancing test:

> The extent to which the privilege includes communications to a non-lawyer by the lawyer's client is determined by balancing two competing factors: 1) The need of the attorney for the assistance of the non-lawyer in effectively representing the client, and 2) The increased potential for inaccuracy in the truth-finding process as the trier of fact is deprived of valuable witnesses.

425 F.Supp. at 1046. *Smith* recognized that, given the crucial role of mental health experts to an insanity defense, strong policy reasons favor extension of the attorney-client privilege to such experts. However, the court rejected the notion that such a privilege is constitutionally compelled, finding the privilege to be qualified and subject to infringement by either actual or implied waiver. We agree with this reasoning, particularly in light of our protection of Austin's statements regarding the offenses. The *Smith* court stated:

> Whether a waiver may be found ... depends, at least in part, on considerations of fairness and the salutory concept that the trier of fact should have adequate access to as much of the available psychiatric testimony as possible where the defendant's mental state is in issue.

425 F.Supp. at 1049. Although there is a split of authority, federal and state courts from other jurisdictions have adopted the reasoning in *Smith.* See, e.g., *Noggle v. Marshall,* 706 F.2d 1408 (6th Cir.), cert. denied, 464 U.S. 1010, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *Granviel v. Estelle,* 655 F.2d 673 (5th Cir.), cert. denied, 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1981); *United States v. Carr,* 437 F.2d 662

(D.C.Cir.1970), *cert. denied,* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971); *State v. Craney,* 347 N.W.2d 668 (Iowa), *cert. denied,* 469 U.S. 884, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984); *State v. Dodis,* 314 N.W.2d 233 (Minn.1982); *State v. Carter,* 641 S.W.2d 54 (Mo.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); *Haynes v. State,* 103 Nev. 309, 739 P.2d 497 (1987); *State v. Bonds, supra.* As the Iowa Supreme Court stated in *Craney:*

> [I]t would be incongruous to allow a party to put a matter in issue and then deny access of the opposing party to relevant information concerning it.... Our modern concept of criminal trials favors full disclosure of facts, within constitutional limitation, on both sides of the table.

347 N.W.2d at 677, *quoting State v. Cole,* 295 N.W.2d 29, 35 (Iowa 1980). As the court further stated in *Craney, quoting* Saltzburg, *Communication Falling Within the Attorney–Client Privilege,* 66 Iowa L.Rev. 811, 816 (1981):

> [The attorney-client privilege] is not a strategic tool designed to enable a litigant ... to gain an advantage by keeping evidence to [oneself] rather than sharing it with others.

347 N.W.2d at 678.

Applying this balancing test to the matter before us, the trial court properly required disclosure of the names and reports of mental health experts retained by Austin, but failed to shield from disclosure statements made by Austin concerning the offenses.

### CONCLUSION

Because Austin has raised an insanity defense, the identities, reports and opinions of retained experts are discoverable by the state. However, statements made by Austin concerning the offenses must be excised from materials disclosed to the state.

Having determined that the trial court's disclosure order is overly broad, we grant partial relief and remand this matter for further proceedings consistent with this decision.

HATHAWAY and HOWARD, JJ., concur.