THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
PAMELA J. KNUCKLES, Defendant-Appellee.

Second District   No. 2—90—0893

Opinion filed March 25, 1992.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Michael J. Burke, and Kathryn E. Creswell, Assistant State's Attorneys, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas P. Sullivan, of Jenner & Block, and George P. Lynch, of George Patrick Lynch, Ltd., both of Chicago (Kathleen M. Banar, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Pamela Knuckles, was indicted for murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and several other offenses in connection with the death of her mother. Several weeks after defendant was arrested, Dr. Lyle Rossiter, a psychiatrist retained by her attorney, examined her at the Du Page County jail. Although defendant intends to

raise the defense of insanity at trial, she does not intend to call Dr. Rossiter as a witness. The State, however, issued a subpoena *duces tecum* to Dr. Rossiter requesting the production of any notes or memoranda from his interview with defendant. The State subsequently issued a second subpoena to Dr. Rossiter for the purpose of having him testify at trial. The trial court quashed both subpoenas on the basis that they sought the disclosure of information protected by the attorney-client privilege and the work product doctrine. The State now appeals. The issues presented are: (1) whether the attorney-client privilege and work product doctrine apply here; (2) whether, if applicable, the protections afforded by these doctrines are waived because defendant intends to raise a defense of insanity; (3) whether defendant's right to the effective assistance of counsel prohibits the compelled disclosure of any communications between her and Dr. Rossiter; and (4) whether· exigent circumstances exist in this case which justify compelling Dr. Rossiter to produce his notes and memoranda from the interview and to testify. We affirm.

Defendant's mother was killed on November 28, 1984. On December 11, 1984, defendant was indicted for murder and several other offenses. The next day the circuit court issued an order allowing Dr. Rossiter, who had been retained by defendant's attorneys, to examine her at the Du Page County jail. Dr. Rossiter did so later in December.

On June 5, 1985, pursuant to a plea agreement, defendant pleaded guilty to murder. She was sentenced to a 33-year term of imprisonment. Defendant filed a petition for post-conviction relief on January 5, 1989. The circuit court granted the petition on August 1, 1989, vacated defendant's conviction, and allowed her to withdraw her guilty plea because the court found that the plea resulted from the erroneous advice of counsel that defendant was eligible for the death penalty. Defendant was not eligible for the death penalty because she was 17 years of age at the time of the killing. The case was then set for trial.

On June 4, 1990, defendant disclosed her intention to raise the defense of insanity at trial. That same day defendant provided to the prosecution a list of witnesses she intended to call at trial. Two psychiatrists, two psychologists, and one social worker, all of whom examined defendant after her guilty plea was vacated, were on the list. The defense had previously tendered to the State copies of reports from each of these experts. Dr. Rossiter was not on the defense witness list.

Shortly thereafter the State filed a subpoena *duces tecum* upon Dr. Rossiter requiring him to produce all reports, notes, or memo-

randa from his December 1984 examination of defendant. The State subsequently served a second subpoena upon Dr. Rossiter requiring him to appear to testify at defendant's trial. Defendant filed a motion to quash the subpoenas. On July 20, 1990, the trial court granted the motion and quashed the subpoenas on the basis that the attorney-client privilege and the work product doctrine prohibit disclosure of communications between defendant and Dr. Rossiter. The State now appeals.

The issue of the applicability of the attorney-client privilege and work product doctrine to communications between a defendant and a psychiatrist or psychologist retained by defense counsel for the purpose of exploring the possibility of raising an insanity defense is a matter of first impression in Illinois. We will first explore the applicability of the attorney-client privilege to such communications.

In general, the attorney-client privilege permanently protects against disclosure any communications made in confidence by a client seeking legal advice to a professional legal adviser acting in that capacity unless the client waives the privilege. (*People v. Williams* (1983), 97 Ill. 2d 252, 294; *Regan v. Garfield Ridge Trust & Savings Bank* (1991), 220 Ill. App. 3d 1078, 1090.) Relying upon cases from other jurisdictions, the State contends that the attorney-client privilege does not apply because Dr. Rossiter was not an attorney. See, e.g., *State v. Craney* (Iowa 1984), 347 N.W.2d 668, 677; *State v. Carter* (Mo. 1982), 641 S.W.2d 54, 57.

Our supreme court held in *People v. Knippenberg* (1977), 66 Ill. 2d 276, 282-84, that communications between the defendant and an investigator retained by his attorney were protected by the attorney-client privilege because the investigator was an agent of the attorney. The court noted that the privilege extends to communications between a client and agents of an attorney such as a clerk or stenographer whose assistance is indispensable to the attorney's work. (*Knippenberg*, 66 Ill. 2d at 283-84.) In response to the State's argument that the privilege should not apply because the investigator was not essential to communication between the defendant and his attorney, the court stated, "realities of practice often require an attorney's use of investigators." 66 Ill. 2d at 284.

■ There can be little doubt that the assistance of a mental health expert such as a psychiatrist or a psychologist is of critical importance to the accused in determining whether an insanity defense should be raised and in the preparation of such a defense. The United States Supreme Court has concluded that when the question of an indigent defendant's sanity at the time of an offense will be a signifi-

cant factor at trial the assistance of a competent psychiatrist is so vital that the State must provide the accused with access to one who will examine the accused and aid in the evaluation, preparation, and presentation of an insanity defense. (*Ake v. Oklahoma* (1985), 470 U.S. 68, 83, 84 L. Ed. 2d 53, 66, 105 S. Ct. 1087, 1096.) The psychiatrist is needed not only to provide expert testimony at trial but to assess the wisdom of asserting an insanity defense, to assist defense counsel in understanding unfamiliar medical and psychiatric concepts, and to help counsel intelligently scrutinize adverse psychiatric testimony. *State v. Pratt* (1979), 284 Md. 516, 521, 398 A.2d 421, 424.

Therefore, in our view, the rationale of *Knippenberg* applies with equal force to a psychiatrist or psychologist who, like Dr. Rossiter, is retained by defendant or defendant's attorney in order to assist counsel in the evaluation, preparation, or presentation of an insanity defense. Accordingly, under that holding, Dr. Rossiter's communications with defendant are protected by the attorney-client privilege absent a waiver of the privilege.

We note that in *People v. Speck* (1968), 41 Ill. 2d 177, it was held that permitting a fingerprint expert originally retained by the defense to testify at trial did not violate the attorney-client privilege. (*Speck*, 41 Ill. 2d at 200.) In *Speck*, however, the court stated that the expert did not reveal during his testimony the contents of any conversations between him and the defendant or defense counsel. (41 Ill. 2d at 200.) A fingerprint expert such as the one in *Speck* could render an opinion on whether fingerprints belong to defendant merely by comparing the prints to ones which are known to be defendant's. The expert could testify without directly or indirectly revealing any confidential communications taking place while employed by the defense because the expert's opinion need not be based upon those communications.

The same cannot be said when a psychiatrist originally retained by the defense testifies on behalf of the State. The psychiatrist's opinion as to the defendant's sanity will almost invariably result in large part from confidential communications with the defendant which would be directly or indirectly revealed if the psychiatrist testified on behalf of the State. *Speck* is therefore distinguishable and does not alter our conclusion that defendant's communications with Dr. Rossiter are protected by the attorney-client privilege unless the privilege was waived. Our holding is in accord with cases from other jurisdictions in which courts have held that communications between a defendant and a defense-retained psychiatrist or psychologist are protected by the attorney-client privilege. See, *e.g.*, *United States v. Alvarez* (3d Cir. 1975), 519 F.2d 1036, 1046-47; *Houston v. State* (Alaska 1979), 602

P.2d 784, 790; *Miller v. District Court* (Colo. 1987), 737 P.2d 834, 837-38; *State v. Pratt* (1979), 284 Md. 516, 520-21, 398 A.2d 421, 423-25.

The State argues that even if the privilege applies here it is waived because defendant intends to raise the insanity defense at trial. Courts from other jurisdictions are divided on the issue of whether raising an insanity defense constitutes a waiver of the attorney-client privilege with respect to a psychiatrist or psychologist whom the defense does not intend to call as a witness at trial. See, *e.g., Houston*, 602 P.2d at 791; *Miller*, 737 P.2d at 838; *Pratt*, 284 Md. at 521, 398 A.2d at 425-26 (holding no waiver). But see, *e.g., Austin v. Alfred* (1990), 163 Ariz. 397, 401-02, 788 P.2d 130, 135; *People v. Edney* (1976), 39 N.Y.2d 620, 626, 385 N.Y.S.2d 23, 26, 350 N.E.2d 400, 403; *State v. Bonds* (1982), 98 Wash. 2d 1, 21, 653 P.2d 1024, 1035 (holding privilege was waived).

A waiver is an "intentional relinquishment of a known right." (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499.) A waiver arises from the actions, words, or conduct of the individual waiving the right, and it may be either express or implied. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 194.) Defendant has not expressly waived her right to rely upon the attorney-client privilege with respect to her communications with Dr. Rossiter. We must therefore determine whether a waiver of that right should be implied from defendant's announced intention to raise an insanity defense at trial.

In the *Edney* case the New York Court of Appeals based its decision that the privilege was waived by raising an insanity defense upon the fact that, in New York, a defendant pleading insanity is required to submit to an examination by a psychiatrist designated by the prosecution if such an examination is requested. (*Edney*, 39 N.Y.2d at 626, 385 N.Y.S.2d at 26, 350 N.E.2d at 403.) The court concluded that since the defendant must reveal to the prosecution the same facts which would be secreted by the privilege it would not make sense to allow the defendant to use the privilege to bar the testimony of a psychiatrist originally retained by the defense if an insanity defense is raised. 39 N.Y.2d at 626, 385 N.Y.S.2d at 26, 350 N.E.2d at 403.

Likewise, in Illinois, if the defendant intends to raise an insanity defense, the trial court must, upon motion of the State, order the defendant to submit to an examination by at least one qualified psychiatrist or clinical psychologist named by the prosecuting attorney. (See Ill. Rev. Stat. 1989, ch. 38, par. 115—6.) We do not agree, however, with the premise of *Edney* that the same confidences are necessarily revealed to both a defense-retained psychiatrist or psychologist and one designated by the prosecution to examine a defendant.

As we have stated, a defense-retained psychologist or psychiatrist often serves as a consultant and assistant to defense counsel in exploring the possibility of raising an insanity defense and in shaping the defense. This means that some confidential information will likely be divulged to a defense-retained mental health professional that would not be divulged to one retained by the prosecution. Therefore we do not believe that a waiver of the privilege should result merely because a defendant must submit to an examination by at least one mental health professional who is designated by the State.

■■ Another reason given by some courts for recognizing a waiver is that the benefits to be realized by applying the privilege in the present situation are outweighed by the public interest in full disclosure of relevant information regarding the defendant's sanity and by the adverse impact that suppression of a valuable witness would have on the truth-seeking process. (See *Austin v. Alfred* (1990), 163 Ariz. 397, 402, 788 P.2d 130, 135; *State v. Bonds* (1982), 98 Wash. 2d 1, 21, 653 P.2d 1024, 1035.) The attorney-client privilege is a narrowly construed exception to the general rule of disclosing relevant information. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 118.) Thus, the potential impact of recognizing the privilege on the truth-seeking process will be considered in determining the scope and applicability of the privilege. See *Consolidation Coal Co.*, 89 Ill. 2d at 117-18.

As we have seen, section 115—6 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—6) requires defendants who give notice of their intention to rely upon an insanity defense at trial to be examined by at least one qualified clinical psychiatrist or clinical psychologist designated by the prosecution upon motion of the State. Moreover, Supreme Court Rule 413(d) (134 Ill. 2d R. 413(d)) requires that within a reasonable time after the filing of a written motion by the State a defendant must inform the State of any defenses he or she intends to raise at trial or at any hearing. These provisions assure that the State can have early access to expert testimony concerning the issue of a defendant's sanity. They therefore greatly minimize the impact that the silencing of a defense-retained psychiatrist or psychologist would have on the truth-seeking process.

In *State v. Bonds* (1982), 98 Wash. 2d 1, 653 P.2d 1024, however, the Washington Supreme Court concluded that an examination by a defense-retained psychiatrist is likely to shed more light on the issue of defendant's sanity than an examination which is conducted by a psychiatrist designated by the prosecution. (*Bonds*, 98 Wash. 2d at 21, 653 P.2d at 1035.) The reasons stated by the court for this conclusion

are: (1) a defense psychiatric examination will usually take place before a prosecution psychiatric examination does and will therefore occur at a time when the defendant's memory is clearer and his or her mental condition is less likely to have changed significantly; (2) by the time a defendant is examined by a prosecution psychiatrist he or she may have learned during the course of other examinations how to tailor responses so as to support a claim of insanity; and (3) a defendant will usually be more cooperative with a defense-retained psychiatrist than one retained by the prosecution. *Bonds,* 98 Wash. 2d at 21, 624 P.2d at 1035.

There is some validity to the above concerns. It would appear, however, that the requirements of section 115—6 of the Code and Supreme Court Rule 413(d) (134 Ill. 2d R. 413(d)) are sufficient to enable the State to overcome these obstacles in most instances. We do not believe the existence of these concerns is a substantial impediment to the truth-seeking process.

Although defense psychiatrists will generally enjoy some advantage by being able to examine the defendant earlier than the prosecution psychiatrist, all of the examining psychiatrists will be faced with the task of trying to determine what the defendant's mental condition was at the time of the offense. With regard to the second factor it does not seem reasonable to us that many defendants would become so learned from a few prior examinations to enable them to dupe a prosecution psychiatrist into accepting a frivolous insanity claim. Finally the problem of potential lack of cooperation with a prosecution psychiatrist is addressed by that portion of section 115—6 which states that in the event of a defendant's failure to cooperate the trial court shall preclude the defense from presenting expert testimony tending to support an insanity defense (see Ill. Rev. Stat. 1989, ch. 38, par. 115—6). This sanction is a strong deterrent to potentially uncooperative defendants as it all but assures that they will be unable to meet their burden of proving the affirmative defense of insanity by a preponderance of the evidence (see Ill. Rev. Stat. 1989, ch. 38, par. 6—2).

The above considerations must be balanced against the benefits to be realized by allowing a claim of privilege and the potential adverse impact that would result from holding that the privilege was waived. The purpose of the attorney-client privilege is to promote the free flow of communication between the client and the attorney or the attorney's agent by removing the fear that confidential information may be disclosed. (*People v. Williams* (1983), 97 Ill. 2d 252, 294.) We have already discussed the importance of expert assistance to the accused

in exploring the possibility of raising an insanity defense and in preparing and presenting such a defense. Courts which have held that raising an insanity defense does not automatically waive the attorney-client privilege with respect to a defense-retained psychiatrist whom the defense does not call as a trial witness have done so largely out of a concern that a contrary holding would inhibit communication among the defendant, the psychiatrist, and the attorney because of the fear of creating a prosecution witness. (*United States v. Alvarez* (3d Cir. 1975), 519 F.2d 1036, 1046-47; *Houston v. State* (Alaska 1979), 602 P.2d 784, 791; *Miller v. District Court* (Colo. 1987), 737 P.2d 834, 838-39.) As the court pointed out in *Miller*, the ability of the subject to communicate freely and candidly can be crucial to the utility of a psychiatric examination. *Miller*, 737 P.2d at 839.

Furthermore, because of the subjective nature of the fields of psychiatry and psychology we agree with the view expressed by the court in *Alvarez* that a defendant's attorney should be encouraged to consult with more than one expert, possibly with conflicting views, without fear that this may assist the prosecution's case. (*Alvarez*, 519 F.2d at 1047.) Allowing the adoption of an insanity defense to result automatically in a waiver of the privilege would cause many defense attorneys to limit their consultations to psychiatrists with known tendencies to testify on behalf of defendants and to halt such consultations after receiving one favorable report.

Therefore we agree with the observation of the court in *Miller* that holding that the privilege is waived by the assertion of an insanity defense would have a substantial adverse impact upon defense counsel's ability to explore and prepare an insanity defense. (*Miller*, 737 P.2d at 839.) Because this concern outweighs the adverse impact that applying the privilege would have on the truth-seeking process, we conclude that a defendant does not automatically waive the attorney-client privilege with respect to communications with a defense-retained psychiatrist or psychologist who will not be called as a witness by the defense by raising a defense of insanity.

■ One court which has concluded that the attorney-client privilege applies to communications between an accused and a defense-retained psychiatrist unless the defendant calls the psychiatrist as a witness has recognized an exception if applying the privilege would so effectively deprive the trier of fact of valuable witnesses "as to undermine the public interest in the administration of justice." (*Pouncy v. State* (Fla. App. 1977), 353 So. 2d 640, 642.) The State argues that this exception should apply here because Dr. Rossiter was the only psychiatrist or psychologist who examined defendant near the time of

the alleged offenses. Because of the unique circumstances of this case, the other experts who have examined defendant on behalf of the prosecution or the defense did so more than five years after the alleged offenses took place.

In *Pouncy*, the court noted that the State had called two prosecution-retained psychiatrists to testify at trial along with two defense-retained psychiatrists. (*Pouncy*, 353 So. 2d at 642.) The court therefore concluded that "there was neither such a dearth of experts available, nor such a precarious position occupied by the State" as to justify invoking this exception to the privilege. 353 So. 2d at 642.

The same is true in the case at bar. A prosecution-retained psychiatrist examined defendant in July 1990, and the trial court has the discretion under section 115—6 of the Code to allow others to examine her. While we presume that Dr. Rossiter's testimony would assist the State, there has been no showing that the State will be unable to find other experts in Du Page County or the Chicago metropolitan area to testify on its behalf. These experts will not have the advantage of having examined defendant near the time of the offenses as Dr. Rossiter did, but the same is true of the defense experts who will testify at trial, and, as we have seen, the defense has the burden of proving the affirmative defense of insanity.

■ We therefore conclude that the unavailability of Dr. Rossiter does not impede the State's ability to secure expert testimony. Accordingly, the attorney-client privilege applies and bars the State from calling Dr. Rossiter as a trial witness. We further conclude that since Dr. Rossiter's report, notes, and memoranda concerning his interview with defendant would directly and indirectly reveal confidential communications the attorney-client privilege also bars the State from compelling production of these documents. See *State v. Kociolek* (1957), 23 N.J. 400, 412-14, 129 A.2d 417, 423-24 (attorney-client privilege bars compelled production of report from defense-retained psychiatrist who examined defendant).

The State further argues that under Supreme Court Rule 413(c) (134 Ill. 2d R. 413(c)) all reports of mental examinations of the defendant in the possession of the defense in a criminal case must be turned over to the State thereby requiring the production of Dr. Rossiter's notes, memoranda, and report. Rule 413(c) also states, however, that portions of such reports containing defendant's statements may be withheld if the defense does not intend to use any portion of the report at a hearing or at trial. (134 Ill. 2d R. 413(c).) It is clear from the record that defendant does not intend to use Dr. Rossiter's report, notes, or memoranda at any hearing or trial.

Additionally, Supreme Court Rule 412(j)(i) (134 Ill. 2d R. 412(j)(i)) states that disclosure will not be required under Rule 412 or 413 of any records, correspondence, reports, or memoranda to the extent they contain "the opinions, theories or conclusions *** of defense counsel or his staff." As we have concluded that Dr. Rossiter, in examining defendant, was acting as an agent of defense counsel, we likewise conclude that he was acting as a member of defense counsel's staff. Therefore any portions of documents containing Dr. Rossiter's opinions, theories or conclusions reached as a result of his examination of defendant are immune from disclosure. The documents sought by the State are not part of the record, but it would appear that the only relevant information they would contain would be statements or summaries of statements by the defendant and Dr. Rossiter's opinions, theories, and conclusions. Accordingly, disclosure of these documents was not required under Rule 412(j)(i) and Rule 413(c).

For the above reasons the trial court acted properly in quashing both subpoenas. The order of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.